No. 26,130.

THE STATE OF KANSAS, *Appellee*, v. KENN B. UHLS, *Appellant*.

SYLLABUS BY THE COURT.

1. HOMICIDE—*Evidence—Sufficiency.* The evidence is held to support a verdict of murder.

2. CRIMINAL LAW—*Preliminary Examination—Right to Separate Trial.* The statute giving each of the defendants jointly charged with felony a right to a separate trial does not apply to preliminary examinations.

3. HOMICIDE—*Evidence—Admissibility—Concealment from Arrest.* The admission of evidence of the defendant's concealing himself from arrest, followed by its being stricken out, is held not to have constituted reversible error.

4. SAME—*Evidence—Admissibility—Insolvency of Business as Motive.* Where the defendant was charged with committing murder, the motive relied upon being the obtaining from the victim of a block of preferred stock—in effect a bond—of a corporation of which the defendant was the manager and principal holder of common stock, evidence of the insolvency of the corporation is held to have been properly admitted.

5. SAME — *Evidence —Admissibility — Letter Showing Attempt to Cover Guilt.* A letter received through the mail purporting to have come from a distant state, adapted to support the story of the defendant in a criminal case, is held to have been properly admitted in evidence against him upon the testimony of an expert that it was written on a typewriter which was shown to have been one kept in the defendant's establishment, which he sometimes used.

6. SAME—*Evidence—Admissibility—Testimony Showing Possession of Property for Which Murder Committed.* Evidence of a conversation of a witness with the person afterwards murdered concerning a sale of stock in a corporation is held to have been properly admitted as tending to show that such person then had the stock in question.

7. SAME — *Instructions — Degrees of Homicide.* The instructions in a murder case are held not to have been erroneous.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed July 10, 1926. Affirmed.

*J. R. Beeching, William H. Burnett* and *Charles Hall,* all of Hutchinson, for the appellant.

*C. B. Griffith,* attorney-general, *W. A. Smith,* assistant attorney-general, *Martin Aelmore,* county attorney, *L. E. Wyman,* assistant county attorney, and *F. L. Martin,* of Hutchinson, for the appellee.

Criminal Law, 16 C. J. pp. 323 n. 99, 750 n. 81; 17 C. J. p. 325 n. 72. Evidence, 22 C. J. p. 273 n. 19. Homicide, 30 C. J. pp. 180 n. 43, 314 n. 54, 402 n. 77.

The opinion of the court was delivered by

MASON, J.: Dr. Kenn B. Uhls was prosecuted upon a charge of killing William E. Gibbs and convicted of murder in the second degree. He appeals.

Gibbs was an aged recluse living alone in a small house in Hutchinson. On the morning of December 30, 1923, his body was discovered by a neighbor, her attention having been attracted because of seeing the light of a coal-oil lamp in his home on the evening before, again at about eleven o'clock, and again about five-thirty in the morning. The body was lying in a large pool of blood near a small table and an overturned chair. A gash was over one eye and a hole in the back of the head. About the left hand were four or five small rubber bands. Pieces of the butt end of a pistol were later found in the room.

In 1913 the defendant's father, who also was a physician, established a sanitarium in the Overland Park district some twenty-five miles southwest of Kansas City. It was reincorporated in September, 1920, as the Uhls Clinics Corporation, with authorized common stock of $750,000 and preferred stock of $500,000, the common stock being principally held by members of the Uhls family. The preferred stock guaranteed eight per cent interest, payable quarterly. The corporation conducted a sanitarium for the treatment of nervous and mental diseases. The defendant's father was president and manager until his death in August, 1922, when the defendant succeeded him. In November, 1921, Gibbs purchased preferred stock in the corporation of the face value of $102,000. There was an entry on the books of the corporation, purporting to have been made on December 19, 1923, showing a transfer of this stock to Charles E. Westerhaven. It is the theory of the state that this entry was fraudulent; that the business of the corporation had been in bad shape and that the defendant murdered Gibbs, or planned and participated in his murder, in order to obtain this stock to save the corporation from financial disaster.

1. The defendant contends that the verdict is not supported by the evidence. A brief summary follows, in which no attempt is made to distinguish between facts admitted or conclusively proved and those which there was some substantial evidence to support, inasmuch as for present purposes the effect would be the same.

The defendant was the principal owner of the common stock of the corporation, which was in a failing condition. Two quarterly dividends on the preferred stock had been passed. In October the defendant had made the remark that Gibbs had no relatives, and he wished he would leave his stock to him when he died. The defendant left the sanitarium on December 28, 1923, in an automobile, in company with a patient who was being treated for the morphine habit and was said to be convalescent. They registered after 7 p. m. on that day at a hotel in Newton, checking out on the morning of the 29th. At about five o'clock in the afternoon of that day a man resembling the defendant, dressed like him, and carrying a black bag like his, was seen to approach the Gibbs house in a hesitating manner, enter it and remain there fifteen or twenty minutes. A man whom the witness who saw him thought was the patient referred to walked by the Gibbs home very slowly about four o'clock in the afternoon, looking back every little while, and stopping and looking up and down the street, then returning in the direction from which he had come. The story told by the defendant, and corroborated by the patient, is that they drove from Overland Park to Newton, his errand being to visit the oil fields near there, returning home through El Dorado, Toronto, Yates Center and Topeka, where they arrived three-quarters of an hour after midnight, stopping to eat at a lunch room; that they renewed their journey about 1:45 or 2 o'clock, but returned to Topeka because of a cold rain and fog, arriving about 5 o'clock, registering at a hotel and checking out about 9. The hotel records show that the defendant and the patient were given rooms at 6:27 and checked out at 9:04. The Gibbs stock was later produced by the defendant, who accounted for its possession by saying it was delivered to him for transfer on December 19 by a man calling himself Westerhaven. The certificates bore an apparently good assignment from Gibbs, which in fact was a forgery. In May, 1924, the then president of the reorganized corporation received through the mail a letter purporting to have been written in San Francisco, to be signed—on typewriter—by Westerhaven, and to give an account of the purchase by him of the stock about the middle of December, 1923, from a man named Merton, who said he had bought it from Gibbs. Expert evidence was introduced showing that the letter was written on a typewriter used at the Uhls sanitarium, and there was testimony that the defendant himself used the typewriter at times.

There was testimony of Gibbs having talked after December 19 as though the stock were still in his hands.

We think the evidence sufficient to sustain the conviction.

2. The defendant was bound over upon a preliminary examination upon a joint charge against him and the patient who accompanied him on his trip. He complains of the refusal at that time to give him a separate hearing. The objection is not good. The statute gives the defendant in a felony case the right to a separate trial (R. S. 62-1429), but the preliminary examination is not a part of the trial.

3. Complaint is also made of the admission of evidence that the sheriff while holding a warrant charging theft of the stock was unable to find the defendant for several days, during which time he remained at a Kansas City club. The evidence was later stricken out by the trial court, the jury being instructed to disregard it. The defendant while on the stand gave his explanation of the affair, and we see no reasonable likelihood of prejudice having resulted, assuming the evidence to have been improperly admitted.

4. It is urged that evidence of the mismanagement and bad financial condition of the corporation was irrelevant. In our judgment it had a direct bearing on the issue as accounting for the strong desire of the defendant to obtain the preferred stock. If the corporation was insolvent, as seems to be the case, for a reorganization followed, the obtaining of this stock would obviously have been a ready means of tiding over its difficulties. The case here is not one of showing that a person lacked money as evidence that he stole. The fact that the business had been so managed as to cause or indicate insolvency had a fair bearing on the matter of how great a temptation was presented to obtain possession of the preferred stock the overdue dividends on which were likely to result in an exposure at any moment.

5. The admission of the purported Westerhaven letter is also complained of on the ground that even assuming there was evidence of its having been written on a typewriter used at the sanitarium there was no evidence that it was written by him, because the standards with which it was compared were not shown to have been his work, while there was evidence that one of them was written by his secretary. It was shown that he sometimes used the typewriter himself. We do not find that the letter written by the sec-

retary was used as a standard on this phase of the case. We regard it as a fair question for the jury whether under all the circumstances it was clear that the Westerhaven letter was written by the defendant.

6. Complaint is made because a witness was permitted to give testimony to this effect: He owned a thousand dollars worth of stock in the Uhls corporation that he wished to turn, and a friend advised him to see Gibbs. On December 20, 1923, he had a talk with Gibbs in reference to the stock and the value of it. Gibbs said he had over a hundred thousand dollars worth of the stock at that time and didn't want to buy any; that he would rather sell; that he really had more than he should own. The witness asked if Gibbs knew anybody he might sell the stock to. Gibbs replied that he had better hold the stock until after January 1, as they were going to pay a dividend then and it would bring more money.

We think the testimony was properly admitted. This is not on the theory that statements made by Gibbs were rendered competent by the fact that he was the person injured by the crime which was under investigation, or by the fact that he was dead, or by both these facts; but because what was said by him in the conversation was so far a part of a verbal act—so far partook of that nature— as to render it admissible upon the same reasoning. The whole episode was a negotiation with respect to the possible sale of stock in the corporation, in which the attitude of Gibbs was that of a man who owned stock himself, giving room for a reasonable inference that he still held that which had been issued to him. The effect in this respect of the conversation did not turn wholly upon the truth or falsity of what Gibbs said. If he had said to the witness, "Don't you want to buy my hundred thousand shares in the Uhls corporation?" the fact that he used these words would be material as having some tendency to show he had the stock, and no question of the truth or falsity of his utterance would be involved. The fact that Gibbs said he would rather sell than buy gave some indication that he had some stock, whether or not he told the truth.

"If . . . an utterance can be used as circumstantial evidence, *i. e.*, without inferring from it as an assertion to the fact asserted . . . the hearsay rule does not oppose any barrier, because it is not applicable." (3 Wigmore on Evidence, 2d ed., § 1788.)

The circumstance that his language took the form of a declara

tion that he did have the stock does not in our judgment vitiate the evidence. The situation moreover has some analogy to that presented where declarations are admitted to characterize or explain the conduct of the speaker. (*State v. Pearce,* 87 Kan. 457, 124 Pac. 814; *State v. Young,* 109 Kan. 526, 200 Pac. 285.)

7. The instructions are criticized on the ground that "if there was any evidence in this case to convict the appellant of homicide, it would seem the only possible conclusion of the jury would be murder in the first degree." It is conceded, however, that the giving of an instruction on the second degree was not error, because this court has so determined. (*State v. Yargus,* 112 Kan. 450, 211 Pac. 121.) It is contended, however, that it was error, after having given that instruction, not to instruct on the lesser degrees of homicide. The defendant concedes there was no probability, if even a possibility, of the defendant being guilty of anything less than first-degree murder. In that case there could be no occasion for any instruction concerning manslaughter, even if a request had been made therefor, which there was not. The circumstance that undue clemency was shown in convicting the defendant of second instead of first-degree murder creates no ground for a sound argument that the court should have instructed on manslaughter.

Complaint is made of the court having instructed the jury that one of the defenses interposed was that of an alibi, which ordinarily constituted a good defense, and then in effect told them the defendant might be convicted if he advised, aided and abetted in the crime. There is no inconsistency or want of pertinence here. The alibi evidence undertook to account for the presence elsewhere at the time of the murder of both the defendant and the patient who accompanied him on his trip. If the jury disbelieved this evidence, as they obviously did, they might still have concluded that the actual killing was done by the patient by the defendant's procurement.

The judgment is affirmed.