Argued October 30, affirmed December 3, 1973, petition for
reconsideration denied January 23, petition for review
denied February 20, 1974

STATE OF OREGON, *Respondent, v.* LAFAYETTE
FREDERICK KEATON (No. C 72-08-2562 Cr),
*Appellant.*
516 P2d 490

*John Toran, Jr.,* Portland, argued the cause and filed the brief for appellant.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

SCHWAB, C. J.

Defendant was indicted for the crime of kidnapping in the first degree, ORS 163.235,[1] for taking a

---

[1] ORS 163.235 provides:

   "(1). A person commits the crime of kidnapping in the

1½-year-old child for the purpose of terrorizing the mother of the abducted child. The court, over objections by the defendant, submitted to the jury both the crime alleged in the indictment and the crime of kidnapping in the second degree.[2] The jury found the defendant guilty of kidnapping in the second degree.

Although we deal separately with his assignments of error, most of them are based on the contention that even if he did take the child—he maintained throughout the trial that he did not—he was not guilty because, as the father, he had the right to do so.

The defendant had an intimate relationship with the mother for more than two years, and was the father of the child.

---

first degree if he violates ORS 163.225 with any of the following purposes:

"(a) To compel any person to pay or deliver money or property as ransom; or

"(b) To hold the victim as a shield or hostage; or

"(c) To cause physical injury to the victim; or

"(d) To terrorize the victim or another person.

"* * * * *"

[2] Kidnapping in the second degree is defined under ORS 163.225 as follows:

"(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, he:

"(a) Takes the person from one place to another; or

"(b) Secretly confines the person in a place where he is not likely to be found.

"(2) It is a defense to a prosecution under subsection (1) of this section if:

"(a) The person taken or confined is under 16 years of age; and

"(b) The defendant is a relative of that person; and

"(c) His sole purpose is to assume control of that person.

"* * * * *"

Some time after December 1971, the relationship between defendant and the mother terminated, although she made persistent efforts to resume it. In June 1972, she filed a paternity suit against the defendant. That proceeding is apparently still pending. The defendant has denied paternity in that proceeding, but, during this trial, stated that he did not deny he was the father.

On August 14, 1972, the mother put her children to bed. She herself retired about 9:30 p.m. The next morning she found the child was missing. Police investigation indicated that entry was probably gained through a garage door that had a defective lock.

About 11:15 p.m. on August 14, 1972, a neighbor woman observed an automobile parked nearby. She described the automobile as being black, boxy, and with an unusual star-shaped design on the hubcaps. She saw the driver, a man, walk to the corner three or four times, then disappear around the corner toward the mother's house. He returned a short time later carrying a bundle in both hands. He tossed the bundle in the front seat of the car and drove off quickly. The next day, after informing the Portland police of what she had seen, the witness was taken on a drive through some neighboring areas. On this trip she identified the car she had seen the night before. The car was parked at the home of defendant's mother, and was registered to defendant.

On the evening of August 14, 1972, defendant, a juvenile parole counselor, attended military reserve training in Vancouver, Washington, at a location approximately 20 minutes from the home of the mother. The meeting ended some time before 11 p.m., but de-

fendant's actual time of departure was not firmly established. He stated that he took a state-owned car to this meeting, but there was no other evidence offered to support this. The defendant also testified that after the meeting he visited a client, but this client was never produced. Evidence was introduced that defendant arrived at the home of his current girlfriend at approximately 11:45 that night. The record does not show the distance of this house from the point of abduction.

The defendant was arrested on August 17, and was still in custody when someone placed the child on the front steps of the home of one Lewis Winchester in Portland on the morning of August 18, 1972. The defendant throughout the proceedings denied taking the child and denied having any knowledge of the child's whereabouts.

■■ Defendant contends that his motion to dismiss at the conclusion of the prosecutor's opening statement should have been allowed because the prosecutor did not, in the course of his remarks, tell the jury that the state was going to prove that the purpose of the abduction was to "terrorize the mother." This assignment has no merit. The prosecutor did not tell the jury that there was no such evidence.

> "The opening statement is * * * not intended to take the place of a complaint or other pleading, and how full it shall be * * * is left to the attorney's discretion * * *." *Lane v. Portland Ry., L. & P. Co.,* 58 Or 364, 114 P 940 (1911).

■■ The defendant also argues that the case should have been dismissed because the prosecutor stated in his opening statement that the defendant was the

father. The defendant misconstrues the law. ORS 109.080 provides:

> "If a mother has not married the father of her child or the paternity of the child has not been established under ORS 109.070,[⑨] the mother may give all authorization for the care, custody, control and welfare of her child * * *."

Furthermore, if he is arguing that as the father he had a complete defense under ORS 163.225 (2), he did not take the steps necessary to rely on that statute, which provides that:

> "It is a defense to a prosecution * * * if:
> "* * * * *
> "(b) The defendant is a relative of that person; and
> "(c) His sole purpose is to assume control of that person."

ORS 161.055 provides that a defense of this nature must be raised by the defendant either through a notice in writing before commencement of trial, or affirmative evidence by a defense witness in the defendant's case in chief. Not only did the defendant not raise this defense in the manner provided by statute, but he contended throughout the trial that he did not take the child.

■ The defendant asserts that the evidence was insufficient to make a jury question of guilt. While the evidence was all circumstantial, it was sufficient under the standard set forth in *State v. Jefferson*, 9 Or App

---

⑨ ORS 109.070 states in its pertinent parts:
"The paternity of a person may be established as follows:
"* * * * *
"(4) By filiation proceedings.
"(5) By paternity being established or declared by other provision of law."

314, 496 P2d 35 (1972), to create a jury question. In addition to the facts set forth above, the evidence tended to show that the kidnapper was intimately familiar with the house from which the child was abducted. Furthermore, at the time the defendant was arrested he was asked by the police if he knew why he was being arrested. His response was, " 'Yeah, supposedly for kidnapping.' "

■ The defendant assigns as error the court's refusal to instruct the jury that defendant was the father of the child, and that as the father he had equal rights with the mother to control of the child. Suffice it to say that no one, including defendant, contended that he was not the father, and such an instruction would have been superfluous. As to the other requested instruction see the discussion, supra, of ORS 161.055 and 109.080.

■ The defendant asked the court to submit a special verdict-form to the jury. He cites no case in which it has been held error for the trial court to refuse to submit a special verdict form in a criminal case. Additionally, the special verdict he submitted made erroneous assumptions as to the law. We have discussed these assumptions in connection with other assignments of error.

■■ The defendant argues that the court erred in giving an instruction requested by the state on the crime of kidnapping in the second degree. The argument that a defendant should be able to prevent for tactical reasons an instruction, even though such is supported by the evidence, on a lesser included offense or a different and lesser degree of the crime was rejected in State v. Gustafson, 248 Or 1, 432 P2d 323

(1967). He also argues that since the court instructed on a lesser included offense, it should also have instructed on the crime of custodial interference (a misdemeanor). ORS 163.245. Such an instruction might well have been proper, but when the court suggested it, defendant specifically rejected it and cannot now complain of the court's failure to give it. In fact, "custodial interference" might well have been a more appropriate charge in this case.

■ Defendant contends that the jury verdict was inconsistent. There is no merit to this argument. Eight jurors voted for acquittal on first degree kidnapping, and the same eight voted for conviction of second degree kidnapping. Two jurors who had voted for conviction of first degree joined the other eight in voting for conviction on second degree. The remaining two of the 12 jurors voted for acquittal on both degrees. There was no inconsistency.

The final assignment of error is the assertion that the court erred in denying the motion for a new trial on the grounds of jury misconduct. After the completion of the trial, evidence was discovered that one of the jurors had driven by the scene of the crime and the surrounding area, had made some approximations of distances and had recorded these on two small diagrams. The juror produced these diagrams at the time of deliberations, but was almost immediately admonished by another juror to put the diagrams away. He complied with the direction. Prior to the trial the entire jury, together with the judge and both attorneys, had visited both the scene and the surrounding areas.

Where a juror without the permission of the

court views the area involved in the trial, the verdict will be set aside unless it is clear that the verdict could not have been affected by the juror's view. *Sanders v. Curry County,* 253 Or 578, 580, 456 P2d 493 (1969). *See, State v. Sands,* 248 Or 213, 215, 433 P2d 256 (1967). Here, the entire jury had viewed the premises and had made its own observations. The later view by one juror, even with his estimate of distances, could not have added anything to the prior view. We conclude that the unauthorized view, while improper, could not have affected the outcome or have been prejudicial to defendant.

Affirmed.