No. 47,392

State of Kansas, *Appellee*, v. Eben W. Carpenter, *Appellant.*

(527 P. 2d 1333)

Opinion filed November 2, 1974.

*Edwin P. Carpenter,* of Turner, Chartered, argued the cause, and *Dennis Horner,* of Kansas City, was with him on the brief for the appellant.

*Gene M. Olander,* District Attorney, argued the cause, and *Vern Miller,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: This is a direct appeal in two criminal cases. In one case the defendant-appellant, Eben W. Carpenter, was charged with first-degree murder and convicted by a jury of second-degree murder under K. S. A. 1971 Supp. 21-3402. In the second case the

defendant was tried to the court on an agreed stipulation of facts and was convicted of thirty counts of theft under K. S. A. 1971 Supp. 21-3701. The defendant is the brother of Jan Carpenter who was charged in the same information with first-degree murder and entered a plea of guilty to second-degree murder.

In the murder case the evidence showed that in the early morning hours of July 2, 1972, Willis Upshaw, an employee of C and C Security Agency, owned and operated by Jan Carpenter and Eben W. Carpenter, was discovered brutally murdered at the Lake Sherwood Estates, southwest of Topeka in Shawnee county. Following an extensive investigation, it was found to be a fact that Willis Upshaw was brutally murdered by Donald Brenner, another employee of C and C Security Agency. Donald Brenner was charged with first-degree murder in the same information as Jan and Bill Carpenter. After entering a plea of second-degree murder, he testified on behalf of the state against Eben W. Carpenter. The evidence was undisputed that Brenner actually fired the gun shots which killed Upshaw. He was the only known witness to the killing. There was a dispute in the evidence as to the involvement of the defendant, Eben W. Carpenter, in the murder. The state's evidence, if believed, established the fact that the murder of Willis Upshaw was the result of a plan and conspiracy conceived by Jan and Eben W. Carpenter. Brenner testified that the motive for killing Upshaw was that Upshaw had been talking too much about an insurance fraud scheme which Upshaw, Brenner, the defendant, Eben W. Carpenter, and others had become involved in several months preceding the murder. Brenner also testified that the two Carpenter brothers had taken out a large amount of life insurarnce on the life of Willis Upshaw and that one of the motives for the killing was to collect the insurance proceeds on the death of Willis Upshaw. It was Brenner's testimony that the murder of Upshaw had been fully discussed and planned in advance. Brenner's testimony, if believed, clearly established that the defendant, Eben W. Carpenter, was guilty of murder in the first-degree as a person who aided or abetted or counseled in the commission of a crime by another person. (K. S. A. 1971 Supp. 21-3205.)

The defense presented evidence which, if believed, would have justified the acquittal of defendant Eben W. Carpenter. The defendant freely admitted his participation in a series of fraudulent transactions in December of 1971, involving the Patrons Mutual

Insurance Company of Olathe, Kansas. Eben W. Carpenter denied, however, any involvement in the murder of Willis Upshaw. Jan Carpenter testified that he and Brenner had at one time discussed killing Upshaw but that the plan had later been abandoned. Jan Carpenter fully supported his brother Eben's position that Eben was not involved in Upshaw's murder. These two theories were submitted to the jury and the jury returned a verdict finding Eben W. Carpenter guilty of murder in the second-degree. The defendant has appealed this conviction to this court alleging six points of trial error.

The defendant's first point on appeal is that the trial court erred in failing to declare a mistrial during the impaneling of the jury because of certain remarks made by the prosecutor. The precise language used by the district attorney which was objected to is as follows:

" 'Now, I am sure you all are aware of the fact that the law requires that before you can find the defendant guilty, that you must find him guilty beyond a reasonable doubt, and that is the burden of proof that the state must carry. In other words, it is our responsibility to show to you by virtue of the evidence that this defendant is guilty beyond a reasonable doubt, and in doing this, you must listen to all the testimony, weigh the testimony according to the rules that the court will give you in its instructions, and *listen to the defendant's testimony* and then apply the same tests and rules that the court will instruct you on. . . .' "

Following this statement by the prosecutor, defense counsel promptly moved for a mistrial on the grounds that the statements of the county attorney constituted an improper reference to the defendant's testifying and placed upon defendant the obligation to testify, thus emasculating his Fifth Amendment privilege against self-incrimination. The trial court overruled the motion for a mistrial but did admonish the jury to disregard the statement and informed the jury that the defendant had the right either to testify or not to testify in his own behalf and informed the jury about the presumption of innocence. We, of course, recognize the rule which makes constitutionally impermissible comments by the prosecutor on the fact that the accused in a criminal case has failed to testify. (*Griffin v. California,* 380 U. S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229.) In *Chapman v. California,* 386 U. S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), the United States Supreme Court declined to hold that a violation of the *Griffin* rule is prejudicial *per se* so as to require reversal as a matter of law. The question to be answered

is whether or not there is a reasonable possibility that the comment or error complained of might contribute to the conviction. If the court finds that the constitutional error was harmless beyond a reasonable doubt then there are no grounds for a reversal. In *Knowles v. United States*, (10th Cir. 1955), 224 F. 2d 168, it was held that the test to be applied where a prosecutor comments on the defendant's failure to testify is that it is reversible error if the language used was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. If the comment does not have the effect of focusing the attention on the failure of the accused to testify, the error, if any, is corrected by an instruction of the trial court admonishing the jury to disregard it. Most of the cases where the problem of improper comment on the defendant's refusal to testify has arisen have involved comments of prosecutors during closing arguments. In this case the statement made came early in the *voir dire* examination of the jury prior to the introduction of any testimony. We believe the intent of the prosecutor was to speak in a general way of the defense evidence rather than the defendant's individual testimony. Furthermore it must be noted that the defendant did in fact testify before the jury during the course of the trial. In view of the instruction given by the trial court immediately following the comment, we have concluded that the defendant's Fifth Amendment privilege against self-incrimination has been properly safeguarded and that no harm was done. This conclusion is consistent with our opinion in *State v. Phippen*, 208 Kan. 962, 494 P. 2d 1137, which held that much stronger language of the prosecutor was not prejudicial error.

The second point raised by the defendant is that his Sixth Amendment right to a trial by an impartial jury was violated because two members of defendant's jury had also been on the panel from which a jury was chosen in the abortive trial of his brother, Jan Carpenter. Jan Carpenter entered a plea of guilty to second-degree murder shortly after his jury was impaneled. Defendant Eben W. Carpenter contends that the two jurors were not impartial because they were informed as to the nature of the charge and as to Jan Carpenter's plea of guilty to second-degree murder. These two jurors were challenged for cause by defendant's counsel, which challenges were overruled by the trial court. The defendant's position here is that these two jurors were disqualified as a matter of law under K. S. A. 1971 Supp. 22-3410 which provides in part as follows:

"22-3410. Challenges for cause. (1) Each party may challenge any prospective juror for cause. Challenges for cause shall be tried by the court.

"(2) A juror may be challenged for cause on any of the following grounds:

. . . . . . . . . . . . . . . . .

"(e) He was a juror at a former trial of the same cause."

It is the position of the state that this provision disqualifies a prospective juror for cause only where that person actually *served* on a jury at a former trial of the same cause and not a person who merely served on the panel of prospective jurors. In our judgment the position taken by the state is correct. The mere fact that a person was on the jury panel in a companion case does not as a matter of law disqualify him from serving at a subsequent trial. Unless a disqualification for cause is mandatory as a matter of law under the statute, it presents an issue of fact to be determined by the trial court and rests within the trial court's sound discretion. The trial court is in a much better position than this court to view the demeanor of the prospective juror and to listen to his answers. (*State v. Springer*, 172 Kan. 239, 239 P. 2d 944.) At the time the jury was being selected in this case the two jurors challenged stated under oath that they could try the case fairly and impartially without prejudice. They further stated that they had no opinion as to the guilt or innocence of the defendant Eben W. Carpenter. These jurors heard no evidence whatsoever as a part of the jury panel in the Jan Carpenter case. In each of the cases relied upon by the defendant the challenged jurors had actually served on the jury and heard testimony in companion cases. Here the challenged jurors did not actually serve on the jury or hear evidence in the case of Jan Carpenter. Furthermore the factual information allegedly known to the challenged jurors prior to their selection as jurors was fully brought forth in the testimony of Jan Carpenter and other witnesses during the trial. It is first the trial court which must be satisfied that the challenged jurors are free from bias and prejudice. The trial court's decision so finding will not be disturbed on appeal unless disqualification appears as a matter of law or abuse of discretion has been shown which we cannot find in this case.

The defendant's third point on this appeal is that the trial court erred in instructing the jury on the offense of second-degree murder.

His contention is that under the facts of this case, second-degree murder was not a lesser included offense nor was there any evidence to support the giving of such an instruction. In support of his position counsel for the defendant argues that the undisputed testimony shows that Jan Carpenter and Brenner conspired and planned Upshaw's murder for over a month prior to the killing and that weapons were purchased ahead of time for the commission of the crime. Since the killing was premeditated it was, of necessity, first-degree murder. Hence if the defendant Eben W. Carpenter conspired with Brenner and Jan Carpenter in the murder he must be guilty of murder in the first-degree and not murder in the second degree. Therefore the trial court erred in instructing on the lesser offense of second-degree murder. The record shows and it is not disputed that counsel for the defendant did not object to the court's instruction on the lesser offense of second-degree murder. In the absence of an objection to an instruction in a criminal case we must apply K. S. A. 1971 Supp. 22-3414 (3) which states in part as follows:

"No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection *unless the instruction is clearly erroneous. . . .*" (Emphasis supplied.)

The precise point which we must determine is whether or not it was clearly erroneous here to instruct on the lesser offense of murder in the second degree. The issue presented by the defendant here has been raised before and has been determined adversely to the defendant's position. In *State v. Yargus*, 112 Kan. 450, 211 Pac. 121, the defendant *Yargus* was charged and tried for committing murder in the first degree by means of poison. She was convicted of second-degree murder and appealed contending that it was prejudicial error because under the evidence she was guilty of first-degree murder or nothing, and that the evidence did not, therefore, sustain a verdict of second-degree murder. In upholding the conviction this court stated in syllabus ¶ 2 as follows:

"A defendant who is convicted of an offense which is less than that charged, but which is necessarily included within it, cannot obtain a reversal on the ground that the evidence showed him to be guilty of the greater offense if any, because the error in that respect is not prejudicial, inasmuch as it benefits instead of injuring him. For this reason one who is prosecuted upon a charge of murder by means of poison and found guilty of murder in the second degree cannot upon appeal effectively complain on the ground that

murder committed by the administration of poison is necessarily of the first degree, even assuming that to be the case."

In the opinion the court recognized that the weight of judicial authority is in favor of the rule just stated, however, the court based its conclusion not upon authority but upon the soundness of the principle that the defendant should not be allowed to derive an advantage from an error from which she suffered no injury, but on the contrary derived a benefit. The same rule was applied in *State v. Uhls*, 121 Kan. 377, 247 Pac. 1050, and in *State v. Bigler*, 138 Kan. 13, 23 P. 2d 598.

There is no question that the rule of *Yargus* is the majority rule throughout the United States and there are many cases cited from other jurisdictions in an annotation in 102 A. L. R. 1019 where the following statement is made at page 1026:

"While there is some conflict on the question, the rule supported by the weight of authority seems to be that if the evidence demands or warrants a conviction of a higher degree of homicide than that found by the verdict, and there is either no evidence in support of acquittal, or, if there is, it is not sufficient to warrant or require acquittal, or is disbelieved by the jury, the defendant is not entitled to a reversal or a new trial on the ground either that the jury found him guilty of the lower degree of homicide, or that the court instructed on the lower degree of homicide, as to which there was no evidence, the theory being that he is not prejudiced thereby and cannot complain."

Other authorities in support of the principle may be found in 41 C. J. S. Homicide, § 427, at page 294.

In order for the rule to be applicable the lesser offense instructed on must be a lesser included offense under the original charge. In *State v. Woods*, 214 Kan. 739, 744, 522 P. 2d 967, we described a lesser included offense in the following language:

". . . If a lesser offense is to be considered a lesser included offense under the law, all elements necessary to prove the lesser offense must be present and be required to establish the elements of the greater offense charged. If each is a separate and distinct offense, requiring proof of an element not necessary in the other, then neither can be a lesser degree of the other offense. . . ."

Second-degree murder is clearly a lesser included offense under first-degree murder since all of the elements of second-degree murder are included in the elements required to establish murder in the first degree.

Counsel for the defendant relies on *State v. Diggs*, 194 Kan. 812, 402 P. 2d 300. In that case the defendant *Diggs* was charged under K. S. A. 21-407 with manslaughter in the first degree. The information alleged and the evidence showed that the defendant struck

several blows with his fist to the face and body of one, Harry Kepner, which caused his death several days later. The trial court instructed the jury on manslaughter in the second degree under K. S. A. 21-411, which defines that offense as the killing of a human being without design to effect death, in the heat of passion, but in a *cruel and unusual manner*. The case was tried to a jury which found the defendant guilty of manslaughter in the second degree. On appeal this court held that the giving of an instruction on manslaughter in the second degree as defined by K. S. A. 21-411 was clearly erroneous and that the defendant was entitled to a new trial. The rationale of the *Diggs* opinion is that in order to constitute manslaughter in the second degree under K. S. A. 21-411 there must be evidence to show a refinement or excess of cruelty sufficiently marked to approach barbarity, and to make it especially shocking. The only evidence presented in the case showed that Diggs had beaten the deceased with his fists. Since there was no evidence that the killing was done in a cruel and unusual manner it was held error for the trial court to give an instruction on second-degree manslaughter. In our judgment *State v. Diggs*, supra, is distinguishable from *State v. Yargus*, supra, and the other cases which we have cited where an instruction was given on second-degree murder and held to be harmless error. As pointed out above, second-degree murder is a true lesser included offense since each and every element of second-degree murder is included in the elements of first-degree murder which has the additional element of premeditation. Manslaughter in the second degree as defined by K. S. A. 21-411, was not a lesser included offense under a charge of manslaughter in the first degree since the offense of manslaughter second contained an element—killing in a cruel and unusual manner—which was not an element in the charge of manslaughter in the first degree. Hence the giving of the instruction on manslaughter in the second degree by the trial court in *State v. Diggs*, supra, was clearly erroneous and a new trial was properly granted. However, under *Yargus* and the other cases discussed above, the giving of the instruction on second-degree murder in this case cannot be a basis for reversal. We therefore reject the defendant's third point as being without merit. In reaching this conclusion we believe that had the defendant's counsel objected to the instruction at the time of the trial, the trial court might well not have given the instruction. If the instruction had been given over de-

fendant's objection, his argument on this appeal might be more persuasive. Apparently at the time of the trial, defendant's counsel believed that the giving of an instruction on second-degree murder would be beneficial to him. The appellant's counsel apparently did not object to the instruction on second-degree murder as a matter of trial strategy.

As his fourth and fifth points on the appeal the defendant takes the position that the trial court erred in admitting into evidence an autopsy report and the testimony of a medical witness for the reason that the autopsy report was not performed in compliance with the provisions of K. S. A. 19-1030 through 19-1033. He further contends that the court erred in admitting the state's photographs taken at the scene of the crime and at the autopsy. He claims these pictures inflamed the passions and prejudices of the jury and were of no probative value. In regard to the admission of the autopsy report and the testimony of the medical witness, Dr. Eckart, we find no error. It is undisputed that Dr. Kirk Scammon, the deputy district coroner for Shawnee county, viewed the body and he so testified at the trial. Assuming there may have been a technical violation in the fact that the autopsy was performed in Sedgwick county rather than in Shawnee county, there was no showing that the autopsy was not properly done and furthermore the cause of death was not disputed. The killing of Upshaw by Brenner was not a contested issue in the case. In regard to the admission of the photographs of the deceased taken at the scene, we believe that these exhibits were properly admitted in view of the testimony of Donald Brenner, which was somewhat vague as to what took place at the actual time the shooting of Upshaw occurred. Furthermore these photographs were admissible under *State v. Campbell*, 210 Kan. 265, 500 P. 2d 21, where we held that even where the defendant concedes the victim's death and the cause of death, photographs to prove the fact and manner of death and the violent nature of the death and to corroborate the testimony of other witnesses, are relevant and admissible.

As a final point the defendant argues that the verdict of the jury was not supported by the evidence. The defendant argues in his brief that any verdict other than murder in the first degree or not guilty is not supported by the evidence and there was no evidence to justify the verdict of second-degree murder. It is not an uncommon thing for a jury, out of sympathy, or what they conceive to be

extenuating circumstances, to find a defendant guilty of a lower degree or grade of offense than that of which the evidence clearly convicts him. The fact that they do so is not grounds for a reversal of the verdict and the judgment entered thereon. (*Commonwealth v. Hoffman,* 439 Pa. 348, 266 A. 2d 726.) Here the jury under the evidence might well have brought in a verdict of guilty of first-degree murder. Bringing in a verdict of murder in the second degree was within the jury's prerogative.

The second case involved on this appeal involves a conviction by the court of thirty counts of theft under K. S. A. 1971 Supp. 21-3701. The state and the defendant stipulated facts which established beyond question that the defendant acting as district supervisor for the Patrons Mutual Insurance Company issued thirty different drafts on the company totaling $15,830. They represented claims paid to individuals who were either fictitious or not in fact involved in automobile accidents. It was stipulated that the thirty claims that were made were fraudulent, fictitious and nonexistent and that the defendant, Eben W. Carpenter, was paid a portion of the proceeds of the checks for his personal use. It is clear to us that the trial court properly found the defendant guilty of the thirty counts of theft contained in the information. We find the evidence sufficient to support the conviction on each of the thirty counts and hence the defendant's only point on appeal is without merit.

For the reasons set forth above the judgments in the two cases consolidated on this appeal are affirmed.

FATZER, C. J., dissents, being of the opinion that, under the facts and circumstances of this case, it was reversible error for the district court to give an instruction on the lesser offense of murder in the second degree. The evidence clearly showed the murder committed was in the first degree.