No. 47,820

STATE OF KANSAS, *Appellee,* v. JOUETTE EDGAR ARNEY, *Appellant.*

(544 P. 2d 334)

Opinion filed December 13, 1975.

*Larry McClain,* of Schnider, Shamberg & May, Chartered, of Kansas City, Kansas, argued the cause, and was on the brief for the appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: Defendant Jouette Arney appeals from a jury con-

viction of two counts of kidnapping (K. S. A. 21-3420), one count of aggravated battery (K. S. A. 21-3414), an one count of murder in the first degree (K. S. A. 21-3401). Defendant filed a timely motion for a new trial based on numerous claims of procedural error and this appeal follows from a denial of that motion by the trial court. Since no question is raised herein as to the sufficiency of the evidence to sustain the conviction, a brief summary of facts leading to defendant's arrest will suffice.

At approximately 3:00 a. m. on July 30, 1972, a couple whom we shall refer to as Mr. K and Miss R were leaving a private club in Kansas City, Kansas, when a man forced his way into their car at gunpoint. Mr. K was ordered by the gunman to drive the car around the city until the three eventually arrived at the Wyandotte County Lake, whereupon the gunman tied Mr. K to a fence and took Miss R to a nearby vacant house. After forcing Miss R to disrobe, the gunman tied her to a bed and left the house to check on Mr. K. Upon discovering that Mr. K had freed himself, the gunman fled in the couple's car.

Shortly thereafter, the police arrived at the lake and picked up Mr. K and Miss R. Enroute to the police station, the police responded to a disturbance call at the residence of a couple whom we shall identify as Mr. and Mrs. G. A vehicle parked in front of the residence was identified by Mr. K as his car which had been taken from the lake area earlier by the gunman. From later testimony of Mrs. G it was established that at approximately 4:30 that morning their doorbell rang and her husband got up and answered the door. She heard gunshots and found her husband lying on the floor. The assailant then entered the house, took her into her bedroom, forced her to undress and tied her to the bed. When he left the bedroom she got loose and ran to her wounded husband. A struggle ensued between Mr. and Mrs. G and the assailant, and Mrs. G was hit on the head with his gun and choked into unconsciousness. Her husband was subsequently shot three times more, ultimately leading to his death. She was hospitalized with cuts on her head which required stitches.

Mr. K, Miss R, and Mrs. G all identified defendant as the assailant. Defendant denied having committed any of these acts and claimed that on the night in question he was at home with a friend.

In support of his motion for a new trial, defendant urged the trial court to set aside its verdict due to the misconduct of a juror.

Affidavits submitted to the trial court indicated that during the course of the trial one of the jurors drove his car to the scene of the crime and investigated the area. The juror further admitted he timed the drive from the scene of the crime to defendant's home and from there to defendant's place of work. The results of the juror's personal investigation were conveyed to the remaining jurors during the course of deliberations and some discussion on the matter ensued. The trial court ruled this did not constitute sufficient cause for a new trial.

It is not disputed that such conduct on the part of the juror is wrongful and in violation of K. S. A. 22-3413, thereby subjecting the errant juror to the possibility of contempt proceedings. The question for our determination, however, is whether such misconduct on the part of a juror necessitates a new trial. Defendant argues the effect of the juror conducting a personal investigation was to permit the jury to consider matters which were not in evidence and thereby deprive him of his constitutional right to confront the witnesses against him, as provided by the Sixth Amendment to the United States Constitution and Section 10 of the Bill of Rights of the Constitution of the State of Kansas. While we agree that a defendant is denied his constitutional right to confront the witnesses against him when a juror conducts an independent investigation of a material issue of fact, and reports the results thereof to the jury during its deliberations, we cannot say that every such jury consideration of extrajudicial evidence necessitates a new trial. Where error is of constitutional character it will not be ground for reversal if it is harmless beyond a reasonable doubt. (*State v. Ritson*, 210 Kan. 760, 504 P. 2d 605.) A great majority of the states which have considered the question of the unauthorized view of the scene of the crime by a juror have followed the rule that such conduct is not to be considered as ground for reversal in the absence of a showing that the material rights of the accused were prejudiced thereby. (*State v. Little*, 164 N. W. 2d 81 [Iowa, 1969]; *State v. Keaton*, 15 Or. App. 477, 516 P. 2d 490 [1973]; *Phillips v. State*, 157 Neb. 419, 59 N. W. 2d 598 [1953]; *State v. McDaniel*, 392 S. W. 2d 310 [Mo. 1965]; *State v. Farris*, 13 N. C. App. 143, 185 S. E. 2d 275 [1971]. See, also, 58 A. L. R. 2d Anno., Jury—Unauthorized View of Premises, p. 1147.) While this court has not spoken to the precise issue before us in the instant case, we have generally held that jury misconduct will not constitute a ground for reversal unless it is shown to have substantially preju-

diced the rights of the defendant. (*State v. Stuart,* 129 Kan. 588, 283 P. 2d 630; *State v. Hanes,* 166 Kan. 271, 200 P. 2d 317; *Christopher & Son v. Kansas Paint & Color Co.,* 215 Kan. 185, 523 P. 2d 709; *State v. McNichols,* 188 Kan. 582, 363 P. 2d 467.) In *Kincaid v. Wade,* 196 Kan. 174, 410 P. 2d 333, we said:

". . . Our attention is called to the well established rule in this state that before a judgment will be reversed and a new trial granted because of misconduct of the jury, it must affirmatively appear that the rights of the party complaining have been prejudiced thereby. . . ." (p. 176.)

Testing the instant case in light of these principles, we cannot say the trial court erred in failing to grant a new trial on this ground. Ordinarily, this is a matter of discretion for the trial court and in considering the evidence in support of the motion the trial court was undoubtedly aware that the evidence establishing the guilt of defendant was substantial. In addition to three eyeball identifications by the victims, there was persuasive circumstantial evidence implicating defendant. The matter investigated by the juror and discussed with the other members of the jury did not relate to a material issue in dispute. The juror's affidavit indicated that he timed the drive from the scene of the homicide on 77th Street to defendant's home on 13th Street, and from there to defendant's place of work a few blocks away. The state admitted in oral argument before this court that it was unable to establish how defendant got home, but it did not feel it was essential to the case. While it appears defendant did not have a car of his own, we recognize there are any number of explanations as to how he traveled the distance in question. We do not view this to be of such significance that it could have affected the verdict of the jury. Although affidavits were submitted to the trial court confirming that the other members of the jury were not influenced by the juror's misconduct, the affidavits had no effect on our decision since they tended to establish the mental processes of the jurors. Evidence may not be introduced on the subject of mental processes of a jury. (K. S. A. 60-441; *State v. Taylor,* 212 Kan. 780, 512 P. 2d 449; *State v. Blocker,* 211 Kan. 185, 505 P. 2d 1099.) The conduct of the juror, while improper, was harmless beyond a reasonable doubt and was not ground for a new trial.

Defendant next contends the trial court erred in overruling his motion for a new trial on the ground of newly discovered evidence. At trial the state offered testimony of defendant's landlady tending to show that defendant left town on August 3, 1972, the same day

a composite drawing appeared in the Kansas City Times. It was the state's theory that defendant fled the city in reaction to seeing the drawing in the newspaper, thereby further implicating him in the crimes. On the other hand, it was defendant's testimony at trial that he left town on August 2, 1972.

In his motion for a new trial, defendant offered evidence of collect telephone calls from Louisville, Kentucky, which defendant's mother claimed she received from him on August 3, 1972, as well as his Louisville hotel registration card for the same date. Defendant contends such evidence was material to the case and undoubtedly would have affected the ultimate verdict. Although defendant refers to the affidavits of several jurors in support of his motion, we must again refuse to consider these statements for the reasons above stated.

It has been consistently held by this court that when the facts are fully within the knowledge of the movant at the time of his trial, they cannot subsequently be categorized as newly discovered evidence (*State v. Anderson*, 211 Kan. 148, 505 P. 2d 691; *State v. Williamson*, 210 Kan. 501, 502 P. 2d 777), and the movant has the burden of showing that the alleged newly discovered evidence could not with reasonable diligence have been produced at trial. (*State v. Lora*, 213 Kan. 184, 515 P. 2d 1086.)

The record clearly reveals the trial court gave careful consideration to this point and correctly reasoned that if defendant made the phone calls and registered in the Louisville hotel as he claims, he obviously would have had knowledge of those facts at the time of the trial. No attempt was made to introduce such evidence until after trial, perhaps for strategic reasons or possibly because the defense attached little significance to the point. Regardless of the reason the evidence was not introduced at trial, there can be no question that it was not newly discovered. The trial court did not abuse its discretion in refusing to grant a new trial on this ground.

The third point raised by defendant is that the trial court erred in refusing to grant a new trial due to misconduct of the prosecuting attorney in closing argument. Defendant states only that the prosecutor made reference to matters which were not established by the evidence and which were pure speculation on his part. He offers no specifics, nor does he attempt to show how he was prejudiced by the conduct of the prosecutor. In the absence of a showing of prejudice which would jeopardize the right of the

accused to a fair trial, misconduct of counsel in closing argument will not require the granting of a new trial. (*State v. Murrell*, 215 Kan. 10, 523 P. 2d 348.)

In addition, defendant concedes he made no objection at trial to the prosecutor's remarks and made no request to have the court admonish the jury to disregard the statements. This matter was raised by defendant for the first time in his motion for a new trial. In light of the failure to make a timely objection we will not predicate reversible error on a complaint of misconduct of counsel. (*State v. Murrell*, supra; *State v. Ralls*, 213 Kan. 249, 515 P. 2d 1205.)

Defendant bases his next claim of error on the failure of the trial court to instruct the jury on the offenses of second degree murder (K. S. A. 21-3402) and battery (K. S. A. 21-3412), as lesser included offenses of murder in the first degree and aggravated battery, respectively. No instruction on either of the lesser offenses was requested at trial nor did defendant object to the instructions given. The state does not argue that second degree murder and battery are not lesser included offenses of the crimes for which defendant was convicted, but it contends there was no evidence to support an instruction on either of the lesser offenses.

In *State v. Warbritton*, 211 Kan. 506, 506 P. 2d 1152, we held it is the duty of the trial court to instruct the jury, not only as to the offense charged, but as to all lesser offenses of which the accused might be found guilty under the information and upon the evidence adduced, even though such instructions have not been requested or have been objected to. This principle is now embodied in K. S. A. 21-3107 (3). The state, however, points out that in a similar situation in *State v. Carpenter*, 215 Kan. 573, 527 P. 2d 1333, we stated that no party may assign as error the giving or failure to give an instruction not requested unless the instruction is clearly erroneous. This statement in *Carpenter* was based on the improper application of K. S. A. 22-3414 (3) to an instruction on lesser included offenses. K. S. A. 22-3414 (3), as applied generally to the review of instructions in criminal cases, requires that a timely and specific objection be made unless the instruction is clearly erroneous. Where error is assigned to the failure to give an instruction on lesser included offenses, K. S. A. 21-3107 (3) controls and it is not necessary that the instruction be clearly erroneous for a non-objecting party to raise the issue on appeal. In *State v. Weyer*, 210 Kan.

721, 504 P. 2d 178, we discussed the rationale behind this distinction and said:

"Plain, unambiguous language is used in this statute and the meaning is clear. No longer is the choice of giving instructions in a situation described therein left to counsel or to the accused, although their views are, of course, to be considered. The statute explicitly places on the trial judge the duty of giving whatever instructions are appropriate upon his analysis of the law and the evidence, and this despite the requests or even the objections of the parties. . . . The statute is specific in nature and, where it is applicable, must control over the general provision contained in K. S. A. 1971 Supp. 22-3414 (3) that no party may assign as error the giving or failure to give an instruction unless he objects thereto." (p. 727.)

Our holding in *Carpenter* is accordingly modified to conform with the principle expressed in *State v. Warbritton*, supra, and *State v. Weyer*, supra.

With the understanding that a trial court has an affirmative duty to instruct on all lesser included offenses required by the evidence, even though not requested by the accused, we have examined the evidence before the trial court to determine if such instructions should have been given. As to the second degree murder charge, there is no question it is a lesser included offense of first degree murder. (*State v. Carpenter*, supra.) Each and every element of second degree murder is included in the elements of first degree murder, which has the additional element of premeditation. It cannot be said that an instruction on second degree murder was clearly required by the evidence. The only direct evidence of the circumstances surrounding the killing of Mr. G was the testimony of his wife. Her account of the incident was that her husband opened the door and was shot several times. There was no evidence of any prior argument with the assailant or that the assailant knew either of the victims. She further testified that she later struggled with the assailant and her husband was shot several more times trying to help. All the evidence points to a premeditated killing. No evidence was offered at trial to refute premeditation. Since the sole defense of the accused was that of alibi, the conclusion is inescapable that he was either present at the scene of the crime and guilty of first degree murder, or not guilty at all. The trial court did not err in failing to instruct on the offense of second degree murder.

Much the same reasoning can be applied to the question of whether the trial court should have given an instruction on the lesser offense of battery. Although battery is a lesser included

offense of aggravated battery, the latter requires proof of the additional element of an "intent to injure." (*State v. Warbritton,* supra.) In the instant case the testimony of Mrs. G shows that defendant forced her into the bedroom, tore off her clothes, and tied her to the bed. When she finally got loose, defendant hit her over the head with his gun and choked her into unconsciousness. It is undisputed that Mrs. G was severely injured and required hospitalization as the result of defendant's conduct. No evidence was offered to contradict or refute the testimony of Mrs. G. Under these circumstances defendant could only be found guilty of aggravated battery or of no crime at all. The trial court did not err in failing to instruct on the lesser included offense of battery.

The final point raised by defendant is that the trial court erred in admitting evidence of a prior, unrelated offense. Defendant argues that the state was permitted to "bootleg" evidence of his prior conviction of an unrelated offense by questioning its own witnesses about a "mug shot" of him taken at the Indiana State Prison. The state concedes the effect of its questioning was to bring to the attention of the jury the fact defendant had served a previous prison sentence, but it argues the reference to the prison photograph was permissible since the first mention of the photograph was by defendant's counsel. The record tends to support the state's position. During defendant's opening statement to the jury, reference was made to the mug shot on several occasions, as well as to the fact defendant had served time in the Indiana State Prison for a prior forgery conviction. Later, during the course of the trial, defendant's counsel had the photograph marked as defendant's Exhibit No. 30, displayed it to the jury, and made further reference to it. Only after the jury was fully aware of defendant's prior conviction did the state introduce evidence relating to the mug shot. Under these circumstances we would be hard pressed to find error on the part of the trial court. Nevertheless, we need not overly burden ourselves with a consideration of this issue since no objection was raised by defendant at trial to the introduction of this evidence. As defendant concedes in his brief, this court has applied the contemporaneous objection rule to this issue, and we see no reason for not doing so here. (*State v. Eaton,* 199 Kan. 610, 433 P. 2d 347; *Baker v. State,* 204 Kan. 607, 464 P. 2d 212; K. S. A. 60-404.)

The judgment of the trial court is affirmed.