Argued and submitted August 28, affirmed November 5, 1979

STATE OF OREGON,
*Appellant,*
*v.*
SHIRLEY EDMISTON, aka
Shirley Phillips,
*Respondent.*

(No. J 78-3045, CA 13748)

602 P2d 282

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

James C. Farrell, Roseburg, argued the cause and filed the brief for respondent.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

THORNTON, J.

## THORNTON, J.

The state appeals from an order sustaining defendant's demurrer to an indictment charging kidnapping in the second degree and conspiracy to kidnap.[1] The indictment alleges that defendant took a child from its mother at the direction of the child's father, and that the father is the husband of the mother.[2] The trial court dismissed the indictment and we affirm.

This case differs from the situation in *State v. Keaton*, 15 Or App 477, 516 P2d 490 (1973), *rev den* (1974), where the father and mother were unmarried, the father had not established paternity, and the mother, by statute, had exclusive control over custody of the child.[3] This court upheld the kidnapping conviction of the father.

The state conceded here that the father could not be guilty of kidnapping his own child, but argued that a person who agrees to assist and does assist a parent in taking a child from the actual physical custody of the other parent without the other parent's consent may be guilty of kidnapping or conspiracy to kidnap even though the parent who sought assistance cannot be convicted of those crimes.

---

[1] ORS 163.225(1)(a) provides:

"A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, he:

"(a) Takes the person from one place to another * * *."

[2] At the hearing on defendant's demurrer, the indictment was amended, by stipulation of the parties, to insert an allegation that the child was unemancipated and that no order of custody had been entered. Although the trial court treated the matter in effect as a submission on stipulated facts, we need not express an opinion as to the propriety of this amendment as the conclusion we reach in this case would be the same without it.

[3] ORS 109.080, since repealed, provided:

"If a mother has not married the father of her child or the paternity of the child has not been established under ORS 109.070, the mother may give all authorization for the care, custody, control and welfare of her child * * *."

ORS 109.080 was repealed in 1975, but the policy underlying that section is present in other code sections. For example, ORS 109.092 permits a mother to unilaterally consent to adoption of the child where the father has not established his paternity.

[15]

The state's position finds support in the decisions of several courts which have held agents guilty of kidnapping while exempting the parent at whose instance the taking occurred. *State v. Brandenburg*, 232 Mo 531, 134 SW 529, 530 (1911); *Wilborn v. Superior Court*, 51 Cal 2d 828, 337 P2d 65, 66 (1959). The distinction rests on the presumption that the danger to the child is substantially less where the person doing the taking is a parent likely to have the best interests of the child in mind. Further, the parent from whose custody the child is taken will recognize the taker, thereby lessening that parent's mental anguish and reducing the likelihood of breaches of the peace inherently probable where the child is taken by an unrecognized, alleged agent of the parent.

While this argument has merit, we are compelled by our reading of Oregon's statute to hold that a person who assists a parent entitled to custody in obtaining physical custody of a child cannot be guilty of kidnapping.

Kidnapping, as defined in ORS 163.225(1), requires that the taking be "without consent." ORS 163.215 provides, in part:

"(1) 'Without consent' means * * * in the case of a person under 16 years of age * * *, that the taking or confinement is accomplished without the consent of his lawful custodian.

"(2) 'Lawful custodian' means a parent, guardian or other person responsible by authority of law for the care, control or custody of another."

"Parent" and "lawful custodian" within the context of ORS 163.215(2) define a legal relationship. Generally, both the mother and father are "parents" and are equally entitled to custody of the child. ORS 109.030. It follows that the father in this case is a lawful custodian unless and until his legal relationship to the child is altered by a court order or some provision of

law.[4] He had the power to authorize the defendant to assist him in obtaining custody. Any other construction of the statute would not "give fair warning of the nature of the conduct declared to constitute" the offense of kidnapping. ORS 161.025(1)(c). Since the conduct engaged in does not constitute a crime, the conspiracy count was likewise properly dismissed. ORS 161.450(1).

Affirmed.

---

[4] *State v. Keaton*, 15 Or App 477, 516 P2d 490 (1973), *rev den* (1974), is an example of a situation where the father is not a "parent" within ORS 163.215(2) and is thus without power to consent to the taking of his child from the mother's custody. The right to custody is not affected by the fact that the mother and father never married, ORS 109.060, but the father in *Keaton* had not established paternity and had therefore not acquired the rights of a parent. *See* ORS 109.094, enacted in 1975. Another example of this phenomenon is where a parent's rights in his or her children are terminated pursuant to ORS 419.472 to 419.590.