## THE STATE v. BROUGHTON BRANDENBURG, Appellant.

### Division Two, February 14, 1911.

1. **CHILDREN: Custody: Stepfather.** A stepfather does not have the right to the custody of a child of tender years as against its own father, even though such stepfather is the husband of the child's mother, and acts as her agent in decoying it away from its father.

2. ————: ————: ————: **Decoying Away: Agent.** Even if the right of the mother to invade the possession of the father to take or decoy away the child existed, it cannot be delegated by her to the child's stepfather. If the child is in the lawful charge and legal custody of one of the parents, one who is not a parent violates the law when he invades that possession and decoys and takes the child away.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*Simon S. Bass* and *Vital W. Garesche* for appellant.

(1) Section 1855, R. S. 1899, does not apply, and was never intended by the Legislature to apply, to cases of disputes between two parents for the possession of their children. Barnes v. Commonwealth, 129 Pa. St. 144; Commonwealth v. Meyers, 146 Pa. St. 29. (2) The mother of the child having a right to take it without being guilty of a crime, no person who acted for her and under her direction could be guilty. (3) The mother's agent was not guilty of malice in carrying out her orders to take the child, and no malice was

shown in the evidence and none can be presumed. (4)
The reasonable doubt in this case should have been re-
solved in favor of the defendant.

*Elliott W. Major,* Attorney-General, and *James
T. Blair,* Assistant Attorney-General, for the State.

(1) The indictment was drawn under Sec. 4489,
R. S. 1909. It charges the offense in the language of
the statute, and this is sufficient, since the statute in-
dividuates the offense. Dowda v. State, 74 Ga. 15;
State v. McRoberts, 4 Blackf. 178; State v. George, 93
N. C. 570; Gravett v. State, 74 Ga. 194. The indict-
ment is not void by reason that it charges that appel-
lant "did . . . . lead, take and carry away, and
decoy and entice away," etc. It does not for that reason
charge more than one offense. There is no inconsis-
tency in the terms used. Such an indictment, attack-
ed on similar grounds, was upheld in State v. Rhodes,
29 Wash. 62; Dowda v. State, 74 Ga. 13; Gravett v.
State, 74 Ga. 194. A similar rule has often been ap-
plied by this court to indictments drawn under other
sections of the statutes. State v. Fancher, 71 Mo. 462;
State v. Kosky, 191 Mo. 12; State v. Nations, 75 Mo.
54; State v. Manley, 107 Mo. 367. Besides, had ap-
pellant desired to attack the indictment on the ground
mentioned, it was incumbent upon him to do so before
verdict. State v. Fox, 148 Mo. 524; State v. Blakely,
184 Mo. 189. (2) There is no contention that appel-
lant did not take the child from St. Louis. Appellant
testified that he did so. It is claimed that he ought
not to have been convicted because there was evidence
tending to show that he was acting as the agent of
his wife, formerly Mrs. Cabanne, the child's mother.
(a) In the first place, there is a contention to the effect
that in no event could a child's mother be punished
under Sec. 4489, R. S. 1909, and, therefore, that her
agent could not come within its purview. Section 4489
excepts none, no matter what relation he may bear to

the child.  Under a statute of the State of Washington, identical in legal effect with ours, a conviction of the child's father was upheld in a case in which he took the child from the custody of the mother, to whom the custody had been awarded in a divorce proceeding. State v. Rhodes, 29 Wash. 62.  In Massachusetts it was held that neither the mother nor her agent is exempt from punishment for an invasion of the father's lawful custody of his child.  Com. v. Nickerson, 87 Mass. 526.  Nor can the father with impunity invade the mother's custody of her child, such custody having been conferred upon her by decree of a court having jurisdiction.  State v. Farrar, 41 N. H. 58.  The principle upon which these cases were decided is approved in John v. State, 6 Wyo. 212.  In this State the right to the custody of the children, as between the parents, is fixed by express statute.  R. S. 1909, sec. 4003.  And this statute has been construed as meaning just what it says.  In re Scarritt, 76 Mo. 582; Brandon v. Carter, 119 Mo. 583.  And without the statute, at common law, the right to the custody of infant children was in the father and was practically inalienable.  In re Scarritt, 76 Mo. 583.  This court is not now concerned with any question as to whether, on proper proceedings, the mother ought not to have been awarded the custody of the child.  The question here is as to the father's right to the custody of the child under our law, he being in the actual custody of the child in this State, there never having been any judicial interference with his custody, and the mother having been, according to her testimony, divorced and having remarried and being a resident of another State.  Oliver v. State, 17 Ala. 596.  This question has not been decided in this State.  In this case the statute and the common law vested the right to the custody of the boy in Cabanne, for the purpose of this decision, as fully as did the decrees vest the right to custody in some of the cases cited.  Some of these cases are markedly like

that at bar and several of them are decided on facts arising under a statute strikingly similar to ours. (b) The case of Burns v. Com., 129 Pa. St. 144, and Com. v. Myers, 146 Pa. St. 29, were decided under a statute somewhat like ours, but that statute is so qualified by its last proviso as to render the cases mentioned value-less here. And the court there (Burns v. Com., l. c. 146), rested its decision on the proviso mentioned. In addition, those were prosecutions of the father, the nat-ural guardian, and not of the mother. The case of State v. Angel, 42 Kas. 222, and those from New York are not in point, because under the Constitution and laws of Kansas (42 Kas. 222), and under the statute of New York (1896, p. 223, sec. 51), the custody of minor children is expressly given, equally, to the fa-ther and mother. And in Kansas the mother and her second husband were held to be punishable under a statute like ours, in a case in which the custody of the child taken had been awarded to the grandmother. The parental relation was held no defense. In re Peck, 66 Kas. 693. (c) It makes no difference what the law of New York, Mrs. Brandenburg's place of residence, may have been. "The relation of parent and child, like that of marriage, is a status." State v. Rhodes, 29 Wash. 68. That status was and is fixed, in this case, by the laws of this State—laws which are clear and free from ambiguity. With those laws the Legis-lature of New York has neither right nor power to in-terfere. State v. Clark, 178 Mo. 22; Snuffer v. Karr, 197 Mo. 190. And at the time appellant decoyed the child away, the legal right to, and the actual possess-ion of, the boy's person, were both lodged in the father. (d) Nor was the alleged agreement of Cabanne to divest himself of the custody of his child at a subse-quent time, though said to have been made with and for the benefit of the mother, of any legal effect. Such a contract was beyond Cabanne's power to make. In re Scarritt, 76 Mo. 583. (e) The consent of the child

made no difference in the case. State v. Rhodes, 29 Wash. 69; Com. v. Nickerson, 87 Mass. 526; State v. Farrar, 41 N. H. 59; Gould v. State, 71 Neb. 655.

BROWN, J.—The defendant was convicted in the circuit court of St. Louis City on an indictment charging him with maliciously, forcibly and fraudulently enticing and decoying away one James Sheppard Cabanne, Jr., a child of seven years of age, with intent to detain and conceal said child from his father, James Sheppard Cabanne, Sr., in violation of section 4489, Revised Statutes 1909.

The record in this case is rather voluminous, made so by injecting into same the history of the marital infelicities of James Sheppard Cabanne, Sr., and his wife, the parents of the child whom defendant is charged with feloniously enticing away. The mother of this child, Minnie Leonard Cabanne, deserted her husband on July 16, 1906, and took the child with her to New York and for several months concealed its whereabouts from the father. She claims to have obtained a divorce from her husband (Cabanne), in the British West Indies, in December, 1906, and shortly thereafter married the defendant, who is a newspaper reporter and appears to have a good standing among the members of that profession. She lived with defendant as his wife in New York until the month of December, 1908, when the defendant being either in jail or a fugitive from justice, she was greatly distressed financially and applied to the father to come and get his child and take care of it. Cabanne, Sr., went to New York, secured possession of his child, and placed it in the home of his mother, Julia C. Cabanne, of St. Louis, where he was living. The mother of the child claims that he promised to return it to her in the following spring if she had a home and was able to take care of it; that he would keep her informed of the child's health and condition,

that he would read to it such letters as she might write and not commit it into the sole custody of Julia C. Cabanne, the child's grandmother. Cabanne, Sr., the father, denies these promises, but his testimony on that point is so evasive as to leave the impression that he made the promises, and the fact that he failed to write her about the child and in January, 1909, instituted a suit for divorce against the mother, praying to be awarded the sole custody of the child, indicates that he did not intend to keep his promises. The mother received notice of the suit, but the action did not culminate in a divorce to Cabanne, Sr., and award to him the custody of the child until May 3, 1909 (after the alleged crime was committed). On April 16, 1909, the defendant, at the request of the mother of James Sheppard Cabanne, Jr., came to St. Louis and decoyed the child away from its father, who was away from home, by telling it that he was going to take it to its mother; but instead of doing so, he took it to San Francisco, California, where he claims its mother agreed to meet him later. He was arrested there on the charge in this case and brought back to St. Louis for trial. The evidence does not indicate that the mother demanded the return to her of the child before she directed defendant to take it away. There was some evidence that the child was allowed by its grandmother to play upon the streets in a filthy condition. This was also denied. The trial resulted in the conviction of defendant and the imposition of a fine of five hundred dollars, from which—after the overruling of timely motions for new trial and in arrest—he brings the case up here by appeal.

The defendant objected and saved exceptions to many points in the evidence introduced by the State, and also complains in his motion for a new trial of many of the instructions; but in his brief herein filed, seems to stand upon the sole proposition that section

4489, Revised Statutes 1909, does not apply to the taking or decoying away of a child by a parent, nor by the agent of one of the parents; and that as he was acting as the agent of his wife, the mother of the child, he did not violate this statute in decoying the child away from the home of its father and taking it to California.

## OPINION.

Whether or not the defendant's wife, who was the mother of Cabanne, Jr., would have violated the law had she taken the child away from its father into whose custody it had been voluntarily committed by her, we need not decide. Defendant claims he was the husband of the child's mother, but even if this were true, he would not, as a stepfather, have any right to its custody under the facts in this case. [Woerner's American Law of Guardianship, sec. 13; Browne on Domestic Relations (2 Ed.), p. 72.]

If it be conceded that defendant's wife after surrendering possession of her child, still retained the right to decoy it away from the father, it by no means follows that she could confer that right upon the defendant as her agent. The parental affection flowing from both father and mother to a child of tender years would be a protection to such child as long as it remained in the actual and immediate custody of either of them, and the filial love of the child would in most cases enable either parent to properly control its conduct, but these safeguards to the child would not exist between it and a mere agent like the defendant in this case who was not bound to it by any tie of consanguinity.

It is apparent that one of the objects of the statute under consideration was to protect parents against the mental anguish which necessarily follows the decoying away and retaining of their children, and if

a child be taken or decoyed away from one parent by another parent, the mental anxiety of the parent who thus loses the child would not be nearly so great as in the case at bar, where the child passed into the hands of one who was under no obligation and perhaps no inclination to properly care for it.

We are of the opinion that the right of one parent to invade the possession of another parent to take or decoy away their mutual offspring, if such a right exists, cannot be delegated to an agent, as the mother attempted. to do in this case. Any other construction of the statute would result in untold confusion, litigation and probably in assaults and other breaches of the law.

To rule otherwise would be to hold that when the parents are living apart and a child is stolen or decoyed away from one of such parents, he or she must first ascertain whether the party who took or decoyed the child away is an agent of the other parent, or a mere kidnaper, before having such culprit arrested.

The letter and spirit of the law we are now construing and also the welfare of those unfortunate children whose parents are living apart and who are denied the soothing atmosphere and benignant influences of homes where conjugal love reigns supreme, forbid us from subscribing to any such construction of the statute as the defendant contends for.

In this case the father had not only the lawful charge but the legal custody of his child, and whatever rights the mother may have had, the defendant violated the law when he invaded the father's possession and took the child away. He was accorded a fair trial, and we affirm the judgment.

*Kennish, P. J.,* and *Ferriss, J.,* concur.