PEOPLE v. NELSON.

1. KIDNAPPING—TAKING BY AGENT—CUSTODY OF PARENT.
    In prosecution of defendant for the kidnapping of his 4-year-old nephew, where the child was taken by defendant in the father's presence and immediately turned over to the boy's father, the possibility of unfavorable results to the child because the defendant acted as an agent, instead of a parent, continuing in the custody was not present (Act No. 328, § 350, Pub. Acts 1931).

2. SAME—TAKING OF CHILD BY AGENT FROM CUSTODY OF PARENT.
    If no suit for divorce or separation has been filed between husband and wife and there is no order of court awarding the custody of a child to the mother, persons who act merely as agents of and for account of the father in taking the child from the custody of the mother are not guilty of kidnapping (Act No. 328, § 350, Pub. Acts 1931).

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 5] 31 Am. Jur., Kidnapping, § 6.
[1–5] Kidnapping or other criminal offense by taking or removal of child by, or under authority of, parent, or one *in loco parentis*. 77 A.L.R. 317.
[4] Offense of abduction or kidnapping as affected by defendant's belief in the legality of his act. 114 A.L.R. 870.
[5] 31 Am. Jur., Kidnapping, § 8.

3. Same—Agent of Parent—Independent Custody—Delay—Statutes.

> The statute prescribing penalty for kidnapping does not in all cases make a good-faith agent of the parent liable as a felon, unless there can be said to be an independent custody on such agent's part or an unreasonable delay in transferring the child to the parent, the principal (Act No. 328, § 350, Pub. Acts 1931).

4. Same—Parents Equally Entitled to Possession of Child—Agent.

> Where one parent is entitled to the possession of a minor child as against all the world except the other parent, and where the father and mother are equally entitled to its possession, one of them does not commit the crime of kidnapping by taking exclusive possession of the child; and a person who assists a parent under such circumstances is not guilty of the crime (Act No. 328, § 350, Pub. Acts 1931).

5. Same—Possession of Mother—Immediate Transfer to Father—Intent.

> Where defendant, as agent of his brother, the father of a 4-year-old boy, together with the father took physical possession of of boy from his mother with the clearly shown purpose of having the father immediately obtain direct physical custody of his own child and both parents were equally entitled to possession of the child, defendant did not violate statute relative to kidnapping as the criminal intent required by statute is not shown (Act No. 328, § 350, Pub. Acts 1931).

Appeal from Gogebic; Landers (Thomas J.), J. Submitted June 17, 1948. (Docket No. 71, Calendar No. 43,898.) Decided September 8, 1948.

Herbert Nelson was convicted of kidnapping. Reversed and remanded for order discharging defendant.

*William F. Pellow* and *Robert E. Lemire,* for appellant.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Bernard E. Larson,* Prosecuting Attorney, for the people.

REID, J. Defendant was convicted by a jury of kidnapping a young child, his nephew, under section 350 of the Michigan penal code (Act No. 328, Pub. Acts 1931, Comp. Laws Supp. 1940, § 17115-350, Stat. Ann. § 28.582). From the judgment imposing sentence, defendant appeals.

Carl Nelson and Constance Nelson, the parents of the child in question, were married in November, 1940, at Ironwood, Michigan, and continuously lived together in New York city from Christmas eve, 1940, until the latter part of May, 1946, during part of which time Carl Nelson was in the armed service of the United States. Carl Nelson was an actor and Constance, a social service worker. Their son, Carl David Nelson, was born August 26, 1942.

Differences arose between the parents. Constance Nelson for protection for herself and her child applied to domestic relations court in New York, family division, May 27, 1946. We are not fully informed as to the nature of the disposition of the matter made by the family division of the domestic relations court, but some disposition of the matter in differences was made so that Constance Nelson had physical charge of the child. She did not apply for a divorce in New York State and she testified that the supreme court of New York State has not granted her custody of the child. There seems to have been accorded to Carl Nelson the right to have his son at least for stated periods for visitation. During one such visit about June 1, 1946, Carl Nelson, the father, took his son from New York State to the residence of his parents in Escanaba, Michigan, without the mother's permission. The mother, Constance, returned to Michigan and on June 29, 1946, accompanied by her two brothers, who she says are "good husky chaps," she went to the Nelson residence in Escanaba. They stopped in front of the house; she saw the little boy on the lawn, got

out of the car, ran across to the child, and picked him up. Defendant, who was there, tried to stop her by putting his hand in front of her. She took the boy to the home of her parents, the Victor home, in Ramsay, Michigan.

On the morning of July 3, 1946, Carl Nelson, the father, and Herbert Nelson, the defendant, accompanied by William Van Laanen and John Bergquist, drove to Ramsay in defendant's car, which they parked on a hill a short distance east of the Victor home. Carl Nelson and defendant got out of the car. Van Laanen and Bergquist remained in the car.

Defendant claims he did not take the child Carl David but the jury by their verdict indicate that they believed the testimony of witness Edward Olson, who testified that defendant picked up the child on the yard back of the house, and ran toward the road. Van Laanen testified that he saw Carl (the father) coming out of the yard with the child in his arms. Bergquist testified to the same effect, and that at no time did he see defendant Herbert have the child. There is no testimony to dispute the defendant's claim that from the instant the child was taken to the automobile, he has been in the exclusive custody of his father.

The four men, Carl Nelson (the father), Herbert Nelson (the defendant), Van Laanen and Bergquist, drove to Pembine, Wisconsin, let Carl with the boy, Carl David, out of the car, and left them there. Defendant knew that Carl intended to go to Owosso, Michigan, with the child. Defendant returned to Escanaba, where he was later arrested.

There is no testimony to show that defendant in the transaction of taking the boy had any motive other than to assist his brother, the father of the boy, in getting the boy back into his (the father's) physical custody. All the facts, including the fact that the defendant let his brother with the boy out

of the car at Pembine, Wisconsin, strongly indicate that defendant's motive was to assist his brother and not to serve any other purpose on defendant's part as to the custody of the boy. The acts on which the prosecution relies to show that the defendant may have had some motive of his own to serve are simply the acts of defendant in assisting the father in getting the son back into the father's custody.

The statute under which the prosecution is brought (Act No. 328, § 350, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115-350, Stat. Ann. § 28.582]), enacted under the title of "kidnaping," is as follows:

"Any person who shall maliciously, forcibly or fraudulently lead, take or carry away, or decoy or entice away, any child under the age of 14 years, with intent to detain or conceal such child from its parent or guardian, or from the person or persons who have lawfully adopted said child or from any other person having the lawful charge of said child, shall be guilty of a felony, punishable by imprisonment in the State prison for life or any term of years. In case such child shall have been adopted by a person or persons other than its parents, in accordance with the statute providing for such adoption, then this section shall apply as well to such taking, carrying, decoying or enticing away of such child, by its father or mother, as by any other person."

The leading case relied on for the prosecution's theory is *State* v. *Brandenberg,* 232 Mo. 531 (134 S. W. 529, 32 L. R. A. [N. S.] 845). The reasoning in that case to support a conviction of the mother's agent is as follows (pp. 537, 538):

"The parental affection flowing from both father and mother to a child of tender years would be a protection to such child as long as it remained in the actual and immediate custody of either of them, and the filial love of the child would in most cases

enable either parent to properly control its conduct; but these safeguards to the child would not exist between it and a mere agent, like the defendant in this case, who was not bound to it by any tie of consanguinity.

"It is apparent that one of the objects of the statute under consideration was to protect parents against the mental anguish which necessarily follows the decoying away and retaining of their children, and if a child be taken or decoyed away from one parent by another parent, the mental anxiety of the parent who thus loses the child would not be nearly so great as in the case at bar, where the child passed into the hands of one who was under no obligation, and perhaps no inclination, to properly care for it."

In the *Brandenberg Case,* the defendant took the child from its father's custody at St. Louis, Missouri, and took it to San Francisco, California, where defendant claims the mother of the child agreed to meet him later, the parents then being as yet undivorced. The reasoning in that case, as quoted above, has applicability to the facts of that case where the mother did not immediately obtain the custody for herself.

The reasoning in the *Brandenberg Case* entirely fails of applicability to the case at bar, where the defendant turned the child immediately into the father's arms, and the father left the scene with the child in his custody with no possibility of the unfavorable results of the agent (as distinguished from the parent) continuing in the custody, as cited in the *Brandenberg Case.*

The trial court in the case at bar properly ruled that no order of the domestic relations court of New York city had been shown awarding the custody to either parent. We are not concerned with the question as to which parent should be awarded the custody, temporary or permanent, of the child Carl

David Nelson. The question here is whether defendant acting for the father and in the immediate presence of the father of the child (no court order forbidding), is to be considered as a felon under Act No. 328, § 350, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-350, Stat. Ann. § 28.582) for aiding the father to immediately and in person obtain the physical custody of his own child.

If no suit for divorce or separation has been filed between husband and wife and there is no order of court awarding the custody of a child to the mother, persons who act merely as agents of and for account of the father in taking the child from the custody of the mother are not guilty of kidnapping. See *State* v. *Elliott,* 171 La. 306 (131 South. 28, 77 A. L. R. 314), in which case the court annulled a conviction and sentence of appellant, one of three persons who obtained the physical custody of a child four years of age from its mother against her protest at the request and authorization of the child's father, who was not present. In that case the court ruled that the trial judge should have granted the requested charge that if the jury found that no suit for divorce or separation had been filed and there was no order awarding the custody to the mother and that the defendants in taking the child were acting merely as the agents of and for account of the father, they were not guilty of kidnapping under the statute.

We consider that the statute in question (Act No. 328, § 350, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115-350, Stat. Ann. § 28.582]) does not in all cases make a good-faith agent of the parent liable as a felon, unless there can be said to be an independent custody on such agent's part or an unreasonable delay in transferring the child to the parent, the principal.

The welfare of the child is paramount. The prosecution in this case in effect requests us to rule that the intervening parent, regardless of what the child's welfare may require or what the circumstances of the intervening parent are, may not authorize an agent to act in his behalf to retrieve the custody of a child. We decline so to rule.

"Where one parent is entitled to the possession of a minor child as against all the world except the other parent, and where the father and mother are equally entitled to its possession, one of them does not commit the crime of kidnapping by taking exclusive possession of the child; and a person who assists a parent under such circumstances is not guilty of the crime. But it has been ruled that where the agent of one of the parents, acting alone and not in company with his principal, takes a child from the other parent without his consent, he is guilty of kidnapping although both parents are equally entitled to the possession of the child." 8 R. C. L. p. 297.

For the latter statement, *State* v. *Brandenberg, supra,* is cited.

Defendant in this case was not shown to have violated the statute (Act No. 328, § 350, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115-350, Stat. Ann. § 28.582]) because the criminal intent required by the statute is not shown. On the contrary, in this case a lawful intent is clearly shown, namely, that the father should immediately obtain direct physical custody of his own child.

The judgment is reversed. The cause is remanded to the circuit court with direction to set aside the sentence (without a new trial), discharge the defendant and cancel his bond.

BUSHNELL, C. J., and SHARPE, BOYLES, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.