138 N.J. Super. 312 (1975)
350 A.2d 539
STATE OF NEW JERSEY, PLAINTIFF,
v.
TIMOTHY STOCKSDALE, a/k/a TIMOTHY STOCKSDALE, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 11, 1975.
*314 Messrs. Clifford J. Weininger and Bruce Chait for the State (Mr. Donald G. Collester, Jr., Prosecutor, attorney).
Mr. Timothy Stocksdale, pro se.
STEIN, J.C.C., Temporarily Assigned.
Defendant moves to dismiss this two-count indictment charging him with breaking and entering with intent to kidnap (N.J.S.A. 2A:94-1) and conspiracy to kidnap, N.J.S.A. 2A:85-1 and 98-2). R. 3:10-3.[1]
The threshold question on this motion is simply stated: In the absence of an order of custody, is a person who assists a parent in obtaining exclusive possession of a child guilty of the crime of kidnapping?
The question is apparently not yet decided in New Jersey. Indeed, there are few decisions throughout the country which deal with the issue. Annotation, "Kidnapping or other criminal offense by taking or removal of child by, or under authority of, parent, or one in loco parentis," 77 A.L.R. 317 (1932).
*315 Since each parent has an equal right to custody of a child in the absence of a court order, a parent does not commit the crime of kidnapping by taking exclusive possession of the child where no such order exists. Annotation, 77 A.L.R., supra at 317; 51 C.J.S. Kidnapping § 4 at 506-507.
There is a distinct split of authority as to whether an agent or other person assisting a parent to gain exclusive custody of a child can be guilty of kidnapping.
Holding the parent's agent or assistant immune from prosecution for kidnapping are People v. Nelson, 322 Mich. 262, 33 N.W. 2d 786, 788 (Sup. Ct. 1948); State v. Elliott, 171 La. 306, 131 So. 28 (Sup. Ct. 1930); People v. Workman, 94 Misc. 374, 157 N.Y.S. 594 (Cty. Ct. 1916).
The contrary view is that the immunity from prosecution is personal to the parent, and one who assists the parent is guilty of the offense. State v. Brandenburg, 232 Mo. 531, 134 S.W. 529, 530 (Sup. Ct. 1911); Wilborn v. Superior Court of Humboldt County, 51 Cal.2d 828, 337 P.2d 65 (Sup. Ct. 1959).
There are frequently mitigating circumstances which might rule out maintenance of a kidnapping charge against the parent's "helper" in these unfortunate custody struggles. For example, in People v. Nelson, supra, defendant was the child's uncle (brother of the child's parent). Defendant assisted his brother in retrieving the child from the mother, who had previously taken the child from the father during a period of visitation. The Michigan Supreme Court ruled that the kidnapping statute of that jurisdiction
* * * Does not in all cases make a good faith agent of the parent liable as a felon, unless there can be said to be an independent custody on such agent's part or an unreasonable delay in transferring the child to the parent, the principal. [322 Mich. at 269, 33 N.W.2d at 788]
The facts in the present case hardly portray defendant as a prime candidate for compassion. He is no brother, sister, or close friend of a distraught parent. Rather, he is *316 a self-styled "private investigator" or "private detective" operating out of the State of Florida. It is clear that his actions in this case were at all times motivated by profit, rather than by altruism.
This case arose because of a marital dispute between a young Florida-based couple, the Markoskis. As a result of their difficulties Geraldine Markoski, the wife, left Florida and returned to New Jersey with the couple's 2 1/2-year-old daughter Michelle Lee. Edwin, the husband, remained in Florida.
When Geraldine came to New Jersey she and Michelle moved into the Fayson Lakes home of Geraldine's parents, Preston and Flora Fairlamb. Geraldine took a job in nearby Pompton Lakes.
While the Markoskis were still living in Florida, and afterward by telephone conversations to New Jersey, Edwin repeatedly made it clear to Geraldine that he intended to take steps to obtain custody of Michelle Lee.
The incident which gave rise to this indictment took place on January 7, 1974, some three months after Geraldine had returned with Michelle to New Jersey. While Geraldine was at work Preston Fairlamb received a telephone call at home. The caller, a stranger, advised Fairlamb that Geraldine had been involved in a "minor auto accident." The caller stated that Geraldine had not been hurt, but that she needed her father to pick her up at a Kinnelon service station because damage to the front wheel made it impossible to operate her automobile. An inquiry was also made by the stranger  supposedly at the request of Geraldine  as to the status of young Michelle. Fairlamb answered the caller that "Michelle is safe and sound here with us." He immediately left the house for Kinnelon to assist his daughter.
Of course, Geraldine had not been involved in any automobile accident, and she required no assistance from her father. The telephone call was simply a ruse to lure Fairlamb from his home.
*317 Very soon after Fairlamb left the house defendant Stocksdale rang the doorbell of the Fairlamb residence. Flora Fairlamb answered the door. Stocksdale made some vague, confusing inquiries and statements about Geraldine's supposed auto accident. Stocksdale's delaying tactics diverted Mrs. Fairlamb just long enough for Edwin Markoski to enter the Fairlamb house through a back door. He spirited away his infant daughter and jumped into a waiting car with Stocksdale. Both men fled with young Michelle to Kennedy International Airport in Long Island, where they were apprehended just as they were about to board a plane to Florida.
The next day, by court order, temporary custody of Michelle Lee was awarded to the mother, Geraldine Markoski.
This two-count indictment followed against both Edwin Markoski and Stocksdale, charging them with breaking and entering with intent to kidnap, and conspiracy to kidnap. The indictment was dismissed against Markoski, because as the natural father of Michelle with equal right to her custody in the absence of a contrary court order, he could not be guilty of kidnapping or of a consipracy to kidnap.
The State agrees with Stocksdale that the conspiracy count against him must fall. The position of the State is that two persons were charged with this conspiracy to kidnap; since the indictment has already been dismissed against one defendant, Markoski, so must dismissal result for this defendant, since it obviously takes more than one person to commit a conspiracy. Reference is made to State v. Collins, 120 N.J. Super. 48, 50 (Law Div. 1972).
The State's reliance on this case may be overgenerous to defendant. In Collins defendant and two police officers were indicted as coconspirators. The two police officers were acquitted after a jury trial. Defendant's jury conviction was overturned for the simple reason that one cannot be a coconspirator with himself.
*318 Persuasive authority exists for the proposition that little short of acquittal of the other accused coconspirators will automatically result in acquittal of the remaining defendant charged with conspiracy. State v. Palumbo, 137 N.J. Super. 13, 19 (App. Div. 1975); State v. Collins, supra, 120 N.J. Super. at 50. Here, of course, dismissal of the codefendant's indictment was not based upon any factual finding of innocence. Markoski's dismissal was apparently because of "legal impossibility"  i.e., that he could not conspire to kidnap his own child. It is questionable as to whether the dismissal of the indictment against Markoski under these circumstances should operate to discharge this defendant from the conspiracy charge. Nevertheless, there is no reason to interfere with the State's reluctance to pursue defendant into this admittedly murky area of conspiracy law. See, e.g., State v. Moretti, 52 N.J. 182, 189 (1968) cert. den., 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed. 2d 363 (1968). Accordingly, the conspiracy count against defendant Stocksdale will be dismissed.
This leaves for consideration the substantive count charging this defendant with breaking and entering with intent to kidnap.
There is much to compel a holding that a relative or close friend should not be guilty of kidnapping when, in good faith, he or she assists a distraught parent in one of these unfortunate custody struggles. People v. Nelson, supra. This type of situation with its own peculiar facts, must await resolution when it properly comes before the appropriate court.
This case, involving this defendant, is hardly a "good faith" situation. Defendant's interest in this matter is purely pecuniary. He was paid by an irate father to help wrest custody from the mother and to assist the father in removing the child to a faraway jurisdiction. Public policy mandates against a finding which would encourage the type of activity engaged in by this defendant. There is little to commend a holding which would encourage or support the *319 movement across state lines of people engaged in the business of resolving custody disputes by baby snatching.
Appropriate to this case is the holding of the California Supreme Court in Wilborn v. Superior Court of Humboldt Cty., supra. The parents had separated, and the mother moved into her father's house with the four-month-old child. Defendant gained access to the grandfather's house on the pretext that she needed assistance to change a flat tire. The father than entered and held the grandfather while defendant took the child from bed and wrapped her in a blanket. Father, defendant and child then departed. The court held defendant answerable to the charge of child stealing, although the father had equal right to custody, stating:
* * * [W]hatever may be the right of one parent, in the absence of an order for child custody, to invade the possession of the other to take or entice away their mutual offspring, such right may not be delegated to an agent. To hold otherwise would result in untold confusion and provoke many possible breaches of the peace in that the parent having possession of the child would be at the mercy of persons acting as alleged agents of the other parent and claiming immunity from prosecution under the statute because of the personal right of their principal. * * * Such consequences would not promote the interests of the parents, the child or the public welfare. * * * [51 Cal.2d at 831, 337 P. 2d at 66, citation omitted]
The present case might be more easily resolved if the remaining count involved a specific charge of kidnapping under N.J.S.A. 2A:118-1. Defendant, however, was not charged with kidnapping. He and his codefendant were charged with breaking and entering with intent to kidnap, a violation of N.J.S.A. 2A:94-1.[2]
It is clear that Stocksdale neither broke into nor entered the Fairlamb premises. He went to the front door, *320 rang the doorbell, and diverted the attention of Mrs. Fairlamb just long enough for Markoski to sneak into another entrance and spirit the child away. Of course, Stocksdale did aid and abet Markoski in the entry to the Fairlamb home, and the snatching therefrom of young Michelle Lee. Of course, under our statute, N.J.S.A. 2A:85-14, any person who aids or abets another to commit a crime is punishable as a principal.
There is no prerequisite to a conviction of an aider and abettor that the principal be tried and convicted. Each participant in an illegal venture is required to "stand on his own two feet." U.S. v. Provenzano, 334 F.2d 678, 691 (3 Cir.1964) cert. den., 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964). An aider or abettor, for example, may generally be convicted where the principal has a defense personal to himself which exonerates him from criminal responsibility. See Jones v. State, 31 Ala. App. 504, 19 So.2d 81 (Ct. App. 1944), holding that the successful defense of insanity made on behalf of the principal does not exonerate the aider and abettor to a homicide. To the same effect, see Pruitt v. State, 91 Tex. Cr. R. 189, 237 S.W. 572 (Cr. App. 1922).
There are, however, exceptions to this general rule of accessorial liability. Accomplice liability, for example, is not sustained where the defense of one party not only exonerates himself but also changes the character of the act so that it can no longer be viewed as criminal in nature. In Yenkichi Ito v. U.S., 64 F.2d 73 (9 Cir.1933) cert. den., 289 U.S. 762, 53 S.Ct. 796, 77 L.Ed. 1505 (1933) defendant was indicted for aiding and abetting the illegal importation of aliens into the United States. His codefendants, the alleged principals, were apprehended in the process of such importation while outside the territorial limits of the United States. Reversing the conviction of the aider and abettor, the then Circuit Court of Appeals held:
*321 * * * Here no illegal act was committed by [appellant's principals] within the jurisdiction of the United States. * * * [A]ppellant could not be properly convicted as their aider and abettor or for attempting, through them, to bring aliens into the United States not lawfully entitled to enter. [64 F.2d at 75]
In this case, dismissal of the remaining count of breaking and entering with intent to kidnap is mandated for these reasons:
1. The principal, Markoski, was exonerated because the taking of the child by him could not be considered an illegal act. An award of temporary custody was not made until after this unsuccessful abduction.
2. If the State takes the position that this defendant should not be answerable on the conspiracy charge because his alleged coconspirator is not answerable on that charge, the same logic and reasoning should apply to defendant in his role as aider and abettor. If the principal is to be exonerated, so, then, should this defendant.
The State will submit an order dismissing this indictment against this defendant.
NOTES
[1] This matter was submitted for determination on the moving and answering papers. Both parties expressly waived oral argument. See R. 1:6-2.
[2] Undoubtedly, the election to charge these defendants with breaking and entering rather than kidnapping itself was an act of mercy on the part of the prosecutor or the grand jury, or both. Kidnapping carries a mandatory term of at least 30 years. N.J.S.A. 2A:118-1.