Kenneth CRUMP, Appellant,

v.

STATE of Alaska, Appellee.

No. 4546.

Supreme Court of Alaska.

March 20, 1981.

Paul Canarsky, Fairbanks, for appellant.

Mark I. Wood and James P. Doogan, Jr., Asst. Dist. Attys., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Kenneth Crump appeals from his conviction for the crimes of kidnapping, former AS 11.15.260, conspiracy to kidnap, former AS 11.15.270, and burglary in a dwelling, former AS 11.20.080. The issues presented involve the scope of the kidnapping statute and the parental exception to its provisions; the admission into evidence of photographs of the victim, S.L., and testimony indicating that S.L. had received facial bruises; the failure of the state to provide the photographs to the defense before trial; and the admission of out-of-court statements made by Jack Dropulich to Michael Lavering and George Wise.

## I. STATEMENT OF THE FACTS

The events leading up to the alleged offense began when the State of Alaska, Division of Social Services, investigated reports of child abuse to S.L., the four-year-old daughter of J.L. Karen Kowalski, a Division of Social Services employee in Fairbanks, first went to J.L.'s apartment which J.L. shared with Crump and her daughter, on June 22, 1978. Following the visit, Crump made two angry telephone calls to Kowalski. After receiving more complaints on July 10, Kowalski returned to J.L.'s apartment on July 11, but she was denied admittance to the apartment. The Fairbanks attorney general's office arranged an immediate emergency custody hearing in superior court, during which the court granted the state custody for forty-eight hours. S.L. was placed in Hospitality House, a licensed child care facility.

Crump and J.L. came to Kowalski's office the next day and demanded to see S.L. On July 14, another superior court hearing was held, at the conclusion of which the state was granted further temporary custody until August 10. J.L. was permitted to visit S.L. at the children's home during this time, but the Division of Social Services did not give Crump permission to see S.L. Crump visited the children's home on July 17, but was not allowed inside.

Cindy Voight, who also lived with J.L. and Crump, testified that on the night of July 23 Crump and J.L. drove her to the Fox nightclub. There J.L. and Crump were joined at their table by Jack Dropulich.

Wayne Grinder, an employee of Hospitality House, testified that at about 7:20 a. m. on July 24, shortly after he had come on duty, he heard the front door open and close, and then heard someone go upstairs and come running back down again within a minute or so. Grinder looked out into the hallway and saw a man whom S.L. later identified as Dropulich, wearing a ski mask, going out the front door with S.L. under his arm. Grinder gave chase for several blocks, but as he drew close, Dropulich turned and pointed a gun at him. Dropulich told Grinder he would kill him if he continued to follow him. The gun closely resembled one owned by Crump. Grinder put his hands up and Dropulich continued moving away. According to S.L.'s testimony, Dropulich ran with her to a car where they met Crump.

Michael Lavering testified that at 8:00 a. m. on July 24 Crump came to his house and wanted to leave S.L. with him. S.L. was still dressed in her nightgown. Lavering recognized Dropulich's voice downstairs.

The police subsequently arrested Crump and after questioning him, recovered S.L. later in the day at Lavering's apartment.

## II. THE SCOPE OF THE KIDNAP-PING STATUTE

Crump's first point in this appeal is that the trial court erred in denying his motion for acquittal based on the canon of statutory construction *ejusdem* generis [1] as applied to Alaska's former kidnapping statute, AS 11.15.260. The statute read as follows:

*Kidnapping.* A person who knowingly and without lawful reason kidnaps, abducts or carries away *and holds for ransom, reward or other unlawful reason* another person, except in the case of a minor by his parent, is punishable by imprisonment for a term of years or for life. [emphasis added]

Crump's argument is that the general words "other unlawful reason," following the specific words "ransom or reward," mean that the statute is confined to conduct having some pecuniary motive or interest, such as bribery or blackmail. Crump also argues that the term "unlawful" should be confined to crimes against the person, or that, in the alternative, there was no unlawful conduct under any Alaska statute.

This court has never given "unlawful" the narrow interpretation that an offender must hold a kidnapping victim for some pecuniary benefit. Convictions for kidnapping have been affirmed where the "unlawful reason[s]" have included assault with a dangerous weapon, rape, attempted rape, and murder.[2]

■ *Ejusdem generis* is not a rule of law, but rather an aid to the interpretation of statutes that are ambiguous or that leave unclear the legislative intent.[3] Here *ejusdem generis* is not appropriate because the statute is not ambiguous. The legislature almost certainly intended to include in the crime of kidnapping cases where a victim is held for any unlawful reason.

It is also instructive to examine court interpretations of the federal kidnapping statute, 18 U.S.C.A. § 1201, which is very similar in its wording to former AS 11.15.-260. The federal statute, although it has

---

1. According to Black's Law Dictionary 464 (5th ed. 1979), *ejusdem generis* applies to statutory construction as follows:
   [W]here general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated.

2. *Post v. State*, 580 P.2d 304 (Alaska 1978) (attempted rape); *Morrell v. State*, 575 P.2d 1200 (Alaska 1978) (rape); *Ladd v. State*, 568

P.2d 960 (Alaska 1977) (first degree murder); *Levshakoff v. State*, 565 P.2d 504 (Alaska 1977) (assault with a deadly weapon and rape).

3. *State v. Casey*, 10 Ariz.App. 516, 460 P.2d 52, 55 (1969); *State v. Gonzales*, 78 N.M. 218, 430 P.2d 376, 377 (N.M.1967). *But see Chugach Elec. Ass'n v. Calais Co.*, 410 P.2d 508 (Alaska 1966), and *State v. Rackle*, 55 Haw. 531, 523 P.2d 299 (1974), where *ejusdem generis* is applied.

been amended several times, has always included a provision that the victim be held "for ransom or reward or otherwise." 18 U.S.C.A. § 1201(a) (West 1966 & Supp.1980).

In *Gooch v. United States*, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522 (1936), the United States Supreme Court considered an argument identical to the one Crump has raised here. To avoid arrest, Gooch and a partner kidnapped two police officers and drove them from Texas into Oklahoma, where the officers were released. On appeal, Gooch argued that *ejusdem generis* prevented the language "or otherwise" from being applied to situations where a victim was held for purposes not related in some way to ransom and reward. The Supreme Court rejected this argument, noting first that Congress intended the words "or otherwise" to broaden the applicability of the statute to include other crimes besides those in which a victim was held for pecuniary benefit. The Court explained:

> The rule of ejusdem generis, while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty. Ordinarily, it limits general terms which follow specific ones to matters similar to those specified; but it may not be used to defeat the obvious purpose of legislation. And while penal statutes are narrowly construed, this does not require rejection of that sense of the words which best harmonizes with the context and the end in view.

297 U.S. at 128, 56 S.Ct. at 397, 80 L.Ed. at 526.

■ Like the *Gooch* court, we believe *ejusdem generis* should not be applied to Alaska's kidnapping statute. We hold that a motive of pecuniary benefit is not required to sustain kidnapping convictions. *Gooch* has been widely followed in situations where victims have been held for a variety of different reasons. The federal courts would undoubtedly apply the federal statute to one in Crump's position. In *United States v. Atchison*, 524 F.2d 367, 368 (7th Cir. 1975), a defendant's conviction for kidnapping a five-year-old child was sustained where the victim was held only out of "concern for the child's well-being and a belief that she was being mistreated by her parents."

The language "or otherwise" in the federal statute is, however, broader than the language "unlawful" in the former Alaska statute. In *United States v. Healy*, 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964), the United States Supreme Court concluded that, under the federal statute, a victim could be held for any purpose even if that purpose was not in itself illegal. The Court concluded that Congress intended to punish kidnapping *per se*, regardless of the ultimate purpose of the kidnapping.[4]

■ Regardless of the rejection of the argument of *ejusdem generis*, it is necessary under Alaska's statute for the victim to be held for some unlawful purpose. Here there was evidence from which the jury could find an unlawful purpose. On July 18, 1978, the superior court awarded temporary custody of S.L. to the Department of Health and Social Services until August 10, 1978. A further custody hear-

---

4. It would be possible to conclude that under an earlier version of Alaska's kidnapping statute no illegal purpose for holding the victim would have to be shown. That statute provided:

> Every person who, without lawful authority, forcefully seizes and confines another or inveigles or kidnaps another, with intent either—
>
> First. To cause such other person to be secretly confined or imprisoned in said Territory against his will; or
>
> Second. To cause such other person to be sent out of said Territory against his will, or

to be sent or transported from one place in this Territory to another place therein, against his will, shall be punished by imprisonment in the penitentiary not less than one nor more than ten years.

§ 65–4–25, ACLA 1949. Thus, forceful abduction alone would be enough for a conviction. In 1957, the statute was repealed and reenacted. The 1957 statute contained the language found in former AS 11.15.260, which requires that the victim be held for "ransom, reward or other unlawful reason." Ch. 99, § 1, SLA 1957.

ing was to be held on August 3, 1978. Crump was certainly aware of the superior court's orders.[5] Removing S.L. from Hospitality House and holding her was "unlawful" because it violated the superior court's order and amounted to contempt of court, in violation of AS 09.50.010,[6] and obstruction of justice, in violation of former AS 11.30.320.[7] There is no merit in Crump's argument that S.L. would have to have been under a court subpoena before these statutes would come into play, or that the court would actually have to adjudge Crump in contempt. S.L.'s abduction was a flagrant and obvious interference with the court's order granting the state temporary custody of S.L. until a final resolution of the custody issue, and constituted an obstruction to the due administration of justice. There was sufficient evidence from which the jury could find that S.L. was abducted for an unlawful reason.

### III. THE PARENTAL EXEMPTION TO THE KIDNAPPING STATUTE

Crump moved in the trial court for an acquittal because of the parental exemption[8] contained in the kidnapping statute. The court denied this motion for acquittal. The essence of the argument is that the parental exemption was meant to extend beyond the parents to include the parents' agents who aid in a kidnapping. Crump further argues that because no one could be guilty of the substantive crime of kidnapping as a result of this immunity, no one could be guilty of conspiracy to kidnap either. The answer to this contention is subsumed in the determination of whether the immunity extends to the parents' agents.

In discussing the exemption from prosecution of a parent's agents, Crump does not cite any cases where a court has denied a parent either permanent or temporary custody of a child. In fact, it is "well settled that . . . one assisting [a] parent commits the crime of kidnapping by taking a child from another to whom its custody has been awarded by a decree of court." Annot., 77 A.L.R. 317, 320 (1932). He relies, however, on a line of cases that conclude that, in the absence of a custody order giving custody to one parent, a parent who takes the child away from another parent or guardian is not guilty of kidnapping. Several of these cases have concluded that persons who assist the parent in taking the child are also entitled to the parent's exemption, see *People v. Nelson*, 322 Mich. 262, 33 N.W.2d 786 (1948); *State v. Edmiston*, 43 Or.App. 13, 602 P.2d 282 (1979); Annot., 77 A.L.R. 317 (1932), although the authorities are split on this issue. Courts in California and Missouri have held that a parent's agents are guilty of kidnapping. *Wilborn v. Superior Court*, 51 Cal.2d 828, 337 P.2d 65, 66 (1959); *State v. Brandenburg*, 232 Mo. 531, 134 S.W. 529 (1911).[9]

---

5. Crump was present at court at the time of the hearing, and, although excluded from the hearing itself, was in the courtroom following the hearing.

6. AS 09.50.010 provides:
   *Acts or omissions constituting contempt.* The following acts or omissions in respect to a court of justice or court proceedings are contempts of the authority of the court:
   . . . .
   (5) disobedience of a lawful judgment, order, or process of the court;
   . . . .
   (9) any other unlawful interference with the process or proceedings of the court . . .

7. Former AS 11.30.320 provided in part:
   *Influencing witnesses, judges or jurors or obstructing administration of justice.* A person, upon conviction, is punishable by a fine of not more than $5,000, or by imprisonment for not less than one year nor more than five years, or by both, if he
   . . . .
   (5) corruptly or by threats or force, or by threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due administration of justice.

8. Former AS 11.15.260 provided for an absolute exemption for an abduction "of a minor by his parent." Such conduct was punishable as child stealing. *See* note 10 *infra*.

9. *See State v. Stocksdale*, 138 N.J.Super. 312, 350 A.2d 539, 543 (N.J.Super.1975), where the court strongly indicated that a private investigator hired by a parent could be held guilty for the taking of a child. The indictment against the defendant, however, was dismissed on other grounds. In a reported English case, *Rex v.*

The reason some courts allow an agent of a parent who is entitled to custody to share in the parent's exemption from prosecution under a kidnapping statute is explained in *State v. Edmiston,* 43 Or.App. 13, 602 P.2d 282, 283–84 (1979):

> Generally, both the mother and father are 'parents' and are equally entitled to custody of the child. ORS 109.030. It follows that the father in this case is a lawful custodian unless and until his legal relationship to the child is altered by a court order or some provision of law. He had the power to authorize the defendant to assist him in obtaining custody. Any other construction of the statute would not 'give fair warning of the nature of the conduct declared to constitute' the offense of kidnapping. [footnote omitted]

This reasoning is obviously inapplicable to Crump's appeal. J.L. had no authority to take S.L. The superior court had temporarily terminated her rights to custody. She could not authorize Crump to take S.L. when she herself was not authorized to do so.[10] Crump plainly had "fair warning" as he was well aware of the fact that the court order temporarily gave the state custody.[11]

The reasoning of the California Supreme Court in *Wilborn,* which declined to extend a parent's exemption from kidnapping to a parent's helpers, seems particularly apposite here:

> To hold [that an agent is immune] would result in untold confusion and provoke many possible breaches of the peace in that the parent having possession of the child would be at the mercy of persons acting as alleged agents of the other parent and claiming immunity from prosecution under the statute because of the personal right of their principal. Such consequences would not promote the interests of the parents, the child or the public welfare.

*Wilborn v. Superior Court,* 51 Cal.2d 828, 337 P.2d 65, 66 (1959) (citation omitted).

■ J.L.'s immunity under the kidnapping statute was personal to her. We hold that where a person, while acting as an agent for a parent not entitled to custody, takes a child from one entitled to custody, the person can be convicted of both the substantive crime of kidnapping and conspiracy to kidnap.

## IV. TESTIMONY ADMITTED UNDER THE CO–CONSPIRATOR EXCEPTION TO THE HEARSAY RULE

■ Crump objected to incriminating statements allegedly made by Jack Dropulich to two witnesses who testified at Crump's trial.

The first statement was made by Dropulich to Michael Lavering. According to Lavering's testimony, as he, George Wise and Dropulich were watching television around noon of the day of S.L.'s kidnapping, a news bulletin came on describing the abduction at Hospitality House. According to Lavering, Dropulich "admitted to

*Duguid,* 75 L.J.K.B. (n.s.) 470, 473 (1906), the court concluded that a parental exemption in a child stealing statute would not apply to a defendant who conspired with the child's mother to take the child away from a third party.

**10.** Despite the parental exemption in the kidnapping statute, parents could have been convicted of the lesser offense of child stealing under former AS 11.15.290, which stated:

> *Child stealing.* A person who maliciously, forcibly or fraudulently takes or entices away a child under the age of 12 years, in a manner other than as provided in § 260 of this chapter, with intent to detain and conceals the child from its parent, guardian, or other person having the lawful charge of the child, is punishable by imprisonment in the penitentiary for not more than 10 years nor less than

six months, or by imprisonment in jail for not more than one year, or by a fine of not more than $500, or by both.

As applied to Crump's kidnapping charge, AS 11.15.290 would seem to be a lesser included offense, but no request was made for such an instruction, possibly for tactical reasons, and no lesser included offense instruction was given.

The new criminal code, which became effective January 1, 1980, provides for a broader exemption from the kidnapping statute, *see* AS 11.41.300(b)(1); AS 11.41.370(2). Crump would not qualify for the exemption even under terms of the new code.

**11.** *See* note 5 *supra.*

me and George, him [Dropulich] and Mr. Crump were there that day." The second statement made by Dropulich was made to Wise while they were driving in a car a few minutes after the news broadcast. Wise testified:

> Well, he [Dropulich] just said that, you know, him and Ken [Crump] had been out drinking and smoking a little bit, out at the Fox, there since about 8:00 that evening 'til closing at 5:00, or whatever, and he said that, you know, as far as he knows, Ken gave him a ride home last night, but that he doesn't remember any details, or you know, jumping out of the car anywhere, seen anything out of the ordinary, but, you know, that he does remember that he got a ride home with Ken, I guess.

Crump raises two arguments concerning the statements made by Dropulich. First, he claims the statements do not qualify as statements made during the course of the conspiracy because the conspiracy had ended. Second, he argues that the statements were not made in furtherance of the conspiracy.

Crump's first argument, that the statements made by Dropulich were made after the conspiracy had ended, has little merit. The conspiracy could not have ended until S.L. was released. Kidnapping is a continuing offense, *State v. Zimmer*, 198 Kan. 479, 426 P.2d 267, 286, *cert. denied*, 389 U.S. 933, 88 S.Ct. 298, 19 L.Ed.2d 286 (1967). This is clear under Alaska's kidnapping statute which encompasses the holding of the victim for an unlawful purpose as well as abduction.

Nevertheless, there is merit to Crump's second argument that the statements were not in furtherance of the conspiracy. Despite the state's rather farfetched argument that Dropulich was attempting to warn Lavering that he should not contact the police, neither of Dropulich's statements recounted by the witnesses had anything to do with the furtherance of the conspiracy. Dropulich's statements could best be described as a "casual admission of culpability to someone he had individually decided to trust." *United States v. Moore*, 522 F.2d 1068, 1077 (9th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976). The court in *Moore* also noted that the "in furtherance of" requirement under the Federal Rules of Evidence, which is the same as that in the Alaska rule,[12] "remains viable, and we believe that this is as it should be." *Id.* at 1077 n.5. We have recently considered the necessity that such statements be made in the furtherance of the conspiracy in *Hawley v. State*, 614 P.2d 1349, 1355 (Alaska 1980), which, like this case, was tried before the adoption of the new Evidence Rules.

We hold that it was error to admit the testimony detailing Dropulich's statements.[13] We must next decide whether the error was harmless.

Alaska Rule of Criminal Procedure 47(a) specifies:

> *Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

Crump did not directly participate in the actual abduction of S.L. from Hospitality House. Wayne Grinder, the employee of the house, abandoned his chase of Dropulich without sighting Crump. Nevertheless, four-year-old S.L.'s testimony placed Crump in the getaway car. Further, an inference

---

**12.** Alaska Rule of Evidence 801(d)(2)(E) defines as statements which are not hearsay:

> a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

Although this rule became effective after Crump's trial, it accurately reflects the prior common law. *See Hawley v. State*, 614 P.2d 1349 (Alaska 1980).

**13.** Crump suggests that Dropulich's statements could not be admitted against him because he was arrested before Dropulich made his statements. We note that the arrest of a conspirator does not necessarily mean that the arrested conspirator is insulated from further statements made by other co-conspirators who remain free so long as the conspiracy itself continues in existence. *United States v. Wentz*, 456 F.2d 634, 637 (9th Cir. 1972).

could be made that Crump was a participant from the fact that Crump brought S.L. to Lavering's house at 8:00 a. m. More significantly, the jury had before it testimony from Crump's former wife relating the fact that, two days after the incident, Crump admitted the abduction to her during a conversation she had with Crump.

It is in this factual context that we must evaluate Lavering's testimony that, immediately after hearing the news report of the abduction at Hospitality House, Dropulich stated that Crump and he were there that day. In view of the strong evidence of Crump's guilt, we have concluded that admission of Dropulich's testimony was harmless error.[14] Given the evidence of Crump's admission that he had taken S.L. from Hospitality House, the testimony of S.L. that Crump was in the getaway vehicle, and the fact that Crump brought S.L. to Lavering's apartment forty minutes after the kidnapping, the testimony regarding Dropulich's questions and statements can be fairly characterized as merely cumulative to the properly admitted evidence of Crump's guilt which was before the jury.

## V. TESTIMONY AND PHOTO-GRAPHS CONCERNING S.L.'S PHYSICAL CONDITION

█ Crump objects to testimony by Karen Kowalski, an employee of the Division of Social Services, and Debra Slade, a woman living in an apartment near J.L. Kowalski testified that when she came to pick S.L. up on July 11, after obtaining a forty-eight-hour court order for S.L.'s custody, the child had two black eyes and bruises on each cheek. Photographs of S.L.'s face that were taken on July 11 were introduced into evidence. Additionally, Slade testified that she had seen S.L. in April, 1978, with dried blood in and around her left ear and red marks under her eyes.

Crump argues that there was no proof linking the child's injuries to him, and that the testimony was irrelevant to establish who removed S.L. from Hospitality House. He claims that the evidence of S.L.'s condition could not be admitted on a conspiracy theory because there was no conspiracy at the time the injuries allegedly took place.

Alaska Rule of Evidence 401 provides:

> Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[15]

The state argues that the testimony and photographs were relevant to show Crump's motive for participating in the abduction, and therefore to circumstantially identify Crump as one of the persons actually involved in the abduction. It contends that S.L. would eventually have identified the one who inflicted the injuries. If J.L. were responsible, she would be unlikely to secure custody and thus the domestic situation between Crump and her would be disturbed. If Crump were named, he might be subject to criminal charges.

In our view the testimony was relevant and admissible. The evidence tended to show that S.L. was being abused and explained the involvement of the Division of Social Services. The evidence of S.L.'s injuries, regardless of who caused them, would tend to show that J.L. or Crump might well believe that, in further custody proceedings, the superior court would not allow J.L. to ever regain custody of S.L. Thus, J.L. and Crump might have believed that the only way they could regain custody was by force.

This evidence, combined with evidence that Crump had made several threatening argumentative telephone calls to Kowalski, and confronted Kowalski in her office, tended to show circumstantially the likeli-

---

14. The applicable test is that articulated in *Love v. State*, 457 P.2d 622, 632 (Alaska 1969).

15. While the Evidence Rules had not been promulgated at the time of Crump's trial, the particular rules to which we refer state concepts

hood of Crump's involvement in any kidnapping scheme.[16]

During Karen Kowalski's testimony, the prosecutor showed Kowalski photographs taken when S.L. was first brought into the state's custody. Crump argues that the state denied him the opportunity to discover these photographs under Criminal Rule 16, and that the superior court erred in not granting a continuance so that Crump could effectively rebut them. Crump also argues that the pictures were irrelevant. This latter argument is the same as that raised with regard to Kowalski's and Slade's testimony of child abuse and, in our opinion, should be rejected for the same reasons.

Prior to trial, Crump made a motion to discover any photographs which the prosecutor intended to use at trial. The state responded that Crump could view photographs "listed in the police report" on twenty-four hours' notice.

Crump suggested to the superior court that the state had misrepresented the fact that the defense had all the photographs, when in fact they did not have the photographs of S.L. According to Crump's lawyer, the prosecutor told him, "You've got everything, don't even bother coming over." The prosecutor did not know whether he thought the defense had all the photographs, but he denied telling the defense that they should not "bother coming over." The superior court concluded that "the photographs were available for inspection and could have been inspected." The court offered to have a hearing after Crump's trial if the defense attorney thought the state should be subject to sanctions for misrepresenting to the defense that they had all the evidence. It does not appear from the record that Crump ever pursued the matter.

that were applicable at that time. *See Eubanks v. State*, 516 P.2d 726, 729 (Alaska 1973).

16. We do not believe that the prejudicial effect of this evidence was so great that it outweighed its probative value. In this respect, Alaska Evidence Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is outweighed by

In the case at bar there is nothing close to the kind of prosecutorial abuse of Rule 16 we noted in *Des Jardins v. State*, 551 P.2d 181, 188 (Alaska 1976). In *Des Jardins*, despite a court order, the state failed to give the defense the names of some witnesses called at trial, demonstrating "a pattern of grudging, last minute disclosures." The evidence in the present record suggests a simple misunderstanding between the parties. Thus, we conclude that there was no violation of Criminal Rule 16.

Finally, defense counsel requested a continuance because:

Not having knowledge of those photographs, I had no opportunity to examine the circumstances, under which they were taken, who they were taken by, [the] exact time they were taken, all of those things.

In our opinion this argument is without merit. The day before Crump requested a continuance, Kowalski had explained adequately how and when the photographs were taken. Crump had enough time to gather any additional information he needed. Moreover, the photographs merely confirmed Kowalski's testimony at trial concerning S.L.'s physical condition, and defense counsel was either aware of what she was going to say or should have been aware. A copy of Kowalski's notes, which referred to the photographs, was furnished to the defense several months prior to trial. Thus, we hold that there was no abuse of discretion on the superior court's part in denying the continuance.

AFFIRMED.

BOOCHEVER, J., not participating.[*]

the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

* This case was submitted to the court for decision prior to Justice Boochever's resignation.